STATE, Plaintiff in error, v. SMITH, Defendant in error.

*No. 75-27-CR. Submitted on briefs May 5, 1976.
—Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 184.)

For the plaintiff in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

For the defendant in error the cause was submitted on the brief of *Robert E. Sutton* of Milwaukee.

HANLEY, J. One issue is raised on appeal. If an oral communication is lawfully intercepted because of the

consent of a party to the conversation but is otherwise inadmissible into evidence in a criminal prosecution due to a failure to comply with statutory requirements, does such deficiency require the additional suppression of the testimony of the consenting participant?

No reference is made in the criminal complaint to the radio device. Although the undercover officer was not the complainant, the complaint recites his statements to the complainant of his observation of the illicit offer to commit an act of sexual perversion for a thing of value. It in no manner indicates that the complainant was relying on the taped conversation. Reference was made in the suppression hearing to a review of the recording by the issuing district attorney prior to charging the defendant, but the fact that this officer reviewed all available data before exercising his discretion does not confer any special status on that evidence.

The defendant sought to insure that the tape of the conversation and the testimony of the eavesdropping officers would not be used as evidence against her. On this appeal, the state concedes that it is bound to agree because of our ruling in *State ex rel. Arnold v. County Court* (1971), 51 Wis. 2d 434, 187 N. W. 2d 354.

In *Arnold* a private construction contractor consented to the concealment in his office of a microphone wired to monitoring and recording devices for the purpose of interception of conversations between himself and a public official suspected of misconduct through the acceptance of bribes. The defendant official sought to bar the admission of the tapes into evidence. Finding no constitutional bar to such admissibility, this court construed the particular language of the Wisconsin statutory procedures on eavesdropping to require the exclusion. Sec. 968.31 (2) (b), Stats., was noted merely as declaring "not unlawful" the nonwarrant interception (with the consent of a participant) of conversations otherwise

privileged under the act from eavesdropping. Since the comprehensive structure of the applicable statutes which seek to restrict eavesdropping without judicial consent could be circumvented by these lawful yet nonwarrant intrusions, the court chose to limit their evidentiary admissibility and thus their attractiveness.

An obvious consequence of *Arnold* would be similar treatment of the testimony of those who have gained their knowledge of the conversation through the use of the surreptitious device. Absent in *Arnold* and raised here is the admissibility of the testimony of the consenting conversationalist.

Assuming *arguendo* that the use of the device here constituted a constitutional or statutory violation which would demand suppression of the direct fruits of its use, *i.e.*, the tape of the conversation and the testimony of the eavesdropping officers, it can hardly be said that the testimony of the plumber was a fruit of the illegal device. Although he did enable the transport of the device, his testimony is independent of its use and would be the same even if the device were not present or had mechanically failed. Such testimony is not a product of the assumed constitutionally infirm action, *see: People v. Beavers* (1975), 393 Mich. 554, 227 N. W. 2d 511, and is untainted by the officer's acquiescence in other activity. The independent origin allows admission. *Nardone v. United States* (1939), 308 U. S. 338, 60 Sup. Ct. 266, 84 L. Ed. 307. Smith cannot assert that the device produced the officer's testimony. Since the functions of the exclusionary rule are to discourage unconstitutional conduct and to insure integrity in the judicial process by disregarding evidence produced through an impermissible procedure, *Conrad v. State* (1974), 63 Wis. 2d 616, 635, 218 N. W. 2d 252, the rule was wholly served without also requiring the silence of the "plumber." Even if the "constable has blundered," *People v. DeFore* (1926), 242

N. Y. 13, 21, 150 N. E. 585, there is a limit to the applicable corrective measures.

This is even more true because Smith is in error in her assertion of an underlying constitutional infirmity. In regards to the question of a Fourth Amendment violation by the concealment for eavesdropping purposes of a mechanical device for broadcasting with the consent of one party to a conversation, defendant argues that *Berger v. New York* (1967), 388 U. S. 41, 87 Sup. Ct. 1873, 18 L. Ed. 2d 1040 and *Katz v. United States* (1967), 389 U. S. 347, 88 Sup. Ct. 507, 19 L. Ed. 2d 576 decree a constitutional violation when no warrant for the intrusion has been issued. This contention was specifically rejected by the plurality in *United States v. White* (1971), 401 U. S. 745, 91 Sup. Ct. 1122, 28 L. Ed. 2d 453, where a cooperative informant wore such a device for conversations with the defendant in their respective homes and in public places.

On the question of warrant, *White* states:

> "No warrant to 'search and seize' is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis v. United States,* 385 U. S. 206 (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. *Lopez v. United States,* 373 U. S. 427 (1963)." *Id.* at page 749.

In reference to the further issue of whether the undercover agent or informant may simultaneously transmit such conversation without a warrant, the court cited *On Lee v. United States* (1952), 343 U. S. 747, 72 Sup. Ct. 967, 96 L. Ed. 1270 and stated:

> "Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant. . . . For constitutional purposes,

no different result is required if the agent instead . . . either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra;* (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra.*" *Id.* at page 751.

This court acknowledged the rule of *White* in the *Arnold Case.* However, in disregarding the decisional law allowing admission of the tapes and testimony produced through the eavesdropping device, this court based its ruling on construction of the statutory enactment on the subject. Eavesdropping with the consent of one party to a conversation is a legislated exception in the federal statutes in addition to being constitutional, 18 U. S. Code sec. 2511 (2) (c), but this court construed its "not unlawful" status to mean that the activity was not prohibited but its fruits were inadmissible. The legislature has not modified the eavesdropping statutes to alter that holding.

Sec. 968.31 (2) specifically provides:

"It is not unlawful under ss. 968.28 to 968.33:
". . .
"(b) For a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

*Arnold* did not declare the above provision illegal but sought to discourage the use of the eavesdropping device as a method of achieving and preserving substantive evidence for a case in chief when those goals were intended to be governed by the statutory warrant process. There are legitimate uses of the technique, such as for the undercover agent's protection, or as a check on the veracity of his account, or as a means of producing defensive impeachment evidence.

We conclude that the *White Case* is dispositive of the so-called illegality cited by Smith in her efforts to extend the *Arnold* rule. The order suppressing evidence is modified by limiting it to the tape and testimony of eavesdropping officers but allowing the testimony of the undercover officer.

*By the Court.*—Order modified and, as modified, affirmed.