**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Gary BARANEK, Defendant–Appellee.**

No. 88–2088.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1989.

Decided May 24, 1990.

Stephen J. Markman, U.S. Atty. (argued), Detroit, Mich., Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., Maureen H. Killion, Silvia Voreas, Dept. of Justice, Washington, D.C., for U.S.

Jerome E. Burns (argued), Saginaw, Mich., for Gary Baranek.

Before JONES and GUY, Circuit Judges; and BERTELSMAN, District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

This appeal presents the issue whether a conversation overheard on a telephone that is the subject of a Title III wiretap should be suppressed when, at the time of the interception, the telephone was inadvertently off the hook and not in use. The district court concluded that the defendant's motion to suppress should be granted. We disagree and reverse.

## I.

On March 2, 1988, the district judge entered a Title III[1] order authorizing the interception of wire communications over a telephone located at the residence of codefendant Patricia Borch. During the course of surveillance, agents intercepted a call on

March 30, 1988. At the conclusion of this call, Borch neglected to replace the telephone properly, and the line stayed open. Surveillance agents were aware of this situation because they heard the recorded warning and beeping that occurs when a telephone is left off the hook. The telephone remained off the hook for two hours and fifteen minutes. During this period, monitoring agents "spot-checked" the line and recorded approximately 50 minutes of conversation between Borch and Baranek while they were in Borch's kitchen. Borch and Baranek were subsequently indicted along with 24 others in a 62–count indictment charging a variety of drug and other offenses.

Both Borch and Baranek subsequently filed motions to suppress this intercepted conversation and both motions were granted.[2] Borch later pled guilty and the government now appeals the suppression order as it related to Baranek.

## II.

Since the fact situation presented is obviously unique, it is not surprising that little case authority exists that is directly on point. The district court, in deciding to suppress, primarily relied on the language of the wiretap statute itself:

In Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, Congress described a "wire communication" essentially as an "aural transfer ... between the point of origin and the point of reception...." 18 U.S.C. § 2510(1). An "aural transfer," in turn, is defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception." *Id.* § 2510(18). Defendant Borch's comments, whether inculpatory or not, clearly "contain the human voice." *See id.* What is not clear, however, is whether

---

[*] Honorable William O. Bertelsman, United States District Court for the Eastern District of Kentucky, sitting by designation.

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs the use of wiretaps to intercept oral communications.

[2] The district court opinion is reported at 695 F.Supp. 898 (E.D.Mich.1988).

the case at bar falls within the requirement of a "transfer ... between the point of origin and the point of reception." *Id.* § 2510(1); *see also id.* § 2510(18).

*United States v. Borch,* 695 F.Supp. 898, 900 (E.D.Mich.1988) (footnote omitted). The district judge answered the "transfer" question in the negative and concluded that "the non-telephonic statements of Defendant Borch ... are not 'wire communications' within the statutory framework underlying the Court's authorization order." *Id.* at 901–02. The court then went on to conclude that suppression was required due to the fact that the "interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a)(iii). The district judge also concluded that suppression was mandated by our earlier holding in *United States v. George,* 465 F.2d 772 (6th Cir.1972) ("[W]iretap evidence secured without regard to the limitation set forth in the authorization order is inadmissible.").

The government makes three arguments on appeal in support of its contention that the district court erred. First, the government contends without much elaboration that the interception was not in violation of the Title III order. The government concedes, however, that an "oral" communication was intercepted under an order authorizing "wire" interception.

Second, the government argues forcefully that even if the interception was technically not "in conformity with the order of authorization," that suppression was not mandated. In support of this argument, the government stresses the good faith and lack of any wrongful conduct on the part of the surveillance agents, as well as arguing

that the district court's heavy reliance on *George* is misplaced.

Third, the government makes a "plain view" argument seeking to carve out by analogy a "plain hearing" exception to the exclusionary provisions of the statute.

The defendant, on appeal, essentially relies upon the district court opinion and makes no effort to enlarge upon its reasoning.

### III.

Before undertaking an analysis of the issues involved, we first note that we are dealing with a highly unusual fact situation which, although capable of repetition, is likely to be a very rare occurrence. Also, since the circumstances involved are wholly fortuitous, we will not impact or shape future conduct because the government was a wholly passive beneficiary of what happened here. This is not to suggest that the privacy interests involved somehow become insignificant in this setting but, rather, that whatever we decide in this case will have something less than global impact.[3] The entire procedure authorizing the government to intercept wire and oral communications is a creature of statute and perhaps the ultimate solution to the problem presented here will come from Congress. In the meantime, it falls to us to address the issue.

Although we find some merit to all three arguments made by the government as to why suppression is not required,[4] we choose to base our holding on the government's "plain view" theory.[5] We have several reasons for doing so. First, although Baranek was quite clearly involved in illegal drug activities, he was the victim of a fortuitous overhearing under circumstanc-

**3.** We have no idea, for example, if the government needs this evidence to have a viable case against Baranek or whether its primary interest is in the pure legal issues involved.

**4.** We find, specifically, that the district court read *George* too broadly. We believe that *George* is a decision limited to its facts. In *George* the surveillance agents, by their own conduct, violated the express limitations of the Title III order. In fact, they had never even seen a copy of the order. Here, the agents did

not violate a specific limitation placed within the authorization. We are not prepared to hold, as did the district judge, that any departure from the order of authorization will result, *ipso facto,* in suppression.

**5.** On appeal, the government has elaborated to a considerable degree on the "plain view" argument it made in the district court. The district court opinion deals with the "plain view" argument only in a footnote.

es in which he certainly had a subjective expectation of privacy. When one calls another on the telephone, it is with the explicit knowledge that the other party could allow someone to listen to the call or even record it. Thus, one takes a calculated risk each time one makes a telephone call. That cannot be said about a face-to-face communication involving criminal activities made in the privacy of the kitchen of one of the speakers. Although the government could have sought authorization to plant a listening device in Borch's home rather than to intercept her telephone calls, it did not do so. The government had probable cause for the telephone intercept; it may or may not have had probable cause to justify placing a "bug" in the house, which would involve more intrusive procedures. What constitutes probable cause for one does not necessarily constitute probable cause for the other. Therefore, when the telephone turns into a "bug," the government is given an advantage not specifically authorized or anticipated by the issuing judicial officer. More significantly, those on the premises are exposed to a "risk" beyond that contemplated by the authorization, and this, it seems to us, is the problem in trying to squeeze what happened here into the ambit of the authorization.

The plain view doctrine, on the other hand, is designed to deal with "inadvertence." Indeed, an inadvertent discovery is the cornerstone of the entire doctrine. In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 *reh'g denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971), the Supreme Court laid down the guiding principles for the application of the plain view doctrine. The Court in the later case of *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), summarized these principles:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to

> seize it," relying on the plain-view doctrine only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

*Id.* at 737, 103 S.Ct. at 1540–41 (citations omitted) (quoting *Coolidge,* 403 U.S. at 465–70, 91 S.Ct. at 2037–40).

It would seem that what occurred here fits within the rationale as well as the literal language of the *Coolidge* requirements. First, there was a properly issued authorization order which clearly makes the "initial intrusion" lawful. In point of fact, the procedures and safeguards involved in securing a Title III authorization for a wire communications interception exceed those involved in the typical search warrant issuance.

Second, the fact that the telephone was left off the hook was certainly inadvertent. By no stretch of the imagination would the government have contemplated ever securing evidence in the manner that occurred here.

Third, it was immediately apparent to the officers that they were hearing evidence related to a crime. The defendant has not suggested any reason why inadvertent hearing should be on a different constitutional footing than inadvertent viewing, and we can think of none. Indeed, what occurred here was much closer to being a discovery *within* the ambit of the "warrant" than the typical inadvertent discovery made in the course of executing a search warrant.

Baranek lays claim (in a constitutional sense only) to being an "innocent" victim and not the subject of the surveillance. This is only partially true, since he is no more "innocent" than anyone who would have called Borch and been picked up on the tape. Additionally, there is no principled reason for distinguishing this situation from the many other scenarios that can be envisioned under the plain view doctrine. If, for example, a search warrant seeking stolen proceeds was being executed at the home of a friend of a suspected bank rob-

ber, and the officers found the homeowner in possession of unrelated contraband, the plain view doctrine would apply. Certainly this hypothetical homeowner has a better claim to being a victim of circumstances than does the defendant here. Of course, neither has any legitimate claim to being a victim at all. As the Court stated in *Coolidge*, "As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement." 403 U.S. at 467, 91 S.Ct. at 2039.

There is no doubt the government got a lucky break of sorts here and stumbled across the evidence involving Baranek. There is nothing in the fourth amendment or Title III, however, that demands that law enforcement and the public should lose the right to use this evidence. Although we concede that where Title III provides greater protection than the fourth amendment a defendant is entitled to the enhanced protection, we do not accept defendant's contention that fourth amendment law is not involved in the resolution of Title III suppression issues. The Supreme Court has indicated to the contrary:

> Any lingering doubt is dispelled by the legislative history which, as we have recognized before in another context, declares that § 2515 was not intended "generally to press the scope of the suppression role beyond present search and seizure law." S.Rep. No. 1097, 90th Cong., 2d Sess., 96 (1968). See *Alderman v. United States*, 394 U.S. 165, 175–176 [89 S.Ct. 961, 967–68, 22 L.Ed.2d 176] (1969).

*Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 *reh'g denied*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978) (footnote omitted). Where, as here, we have a case with a factual situation clearly not contemplated by the statute, we find it helpful on the *suppression* issue (as opposed to the question of whether there was a violation of the authorization order) to look to fourth amendment law. We note in that regard that government agents are charged with no wrongdoing and that to suppress here would have no impact on the future conduct of law enforcement officials. In the usual fourth amendment calculus, these are factors that counsel against the necessity of suppression.

The decision of the district court granting the defendant's motion to suppress is REVERSED and the case is REMANDED for further proceedings.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I believe that Title III should be narrowly construed, and that the district court correctly determined that under *George* suppression was required because the interception was not made in conformity with the authorization. Therefore, I respectfully dissent.

The majority takes an unprecedented leap by extending the plain view exception to include plain hearing under Title III. The majority can cite to no authority for such an extension. Moreover, the majority argues that the instant case fits within the *Coolidge* rationale because there was a properly issued authorization which clearly makes the initial intrusion lawful, and because the agents "inadvertently" overheard Baranek talking to his mother, and inadvertence is at the heart of the plain view exception. In *United States v. Couser*, 732 F.2d 1207, 1208–10 (4th Cir.1984), the Fourth Circuit held that suppression was not required for the interception by Government agents of comments made by the defendant to persons in the background while he was conversing on the telephone. The court impliedly recognized a diminished privacy interest because all of the background conversations intercepted were statements made by an individual with a telephone receiver at his ear. *Id.* at 1209. The court characterized these interceptions as arguably "technical" violations of the authorization order and refused to suppress. However, the *Couser* Court did not rely on the plain hearing analogy adopted by the majority today, stating:

> [W]hether the "plain view" doctrine itself is an exception to the statutory requirements relating to wiretaps, and if so, to what extent, poses a question which need not be reached in the instant case, in

view of our conclusion that if the wiretap order in this case does not cover any of the background conversations, it is not the type of statutory violation requiring suppression.

*Id.* at 1210.

While it is clear that the agents initially inadvertently overheard Baranek talking to his mother, the conversation lasted for over two hours and the agents managed to record approximately 50 minutes of conversation during spot checks. At some point this begins to seem less than inadvertent. Furthermore, I do not believe the initial intrusion was lawful under the authorization order as the majority states because the agents immediately knew they were not listening to a "wire communication" and thus were aware they were operating outside the scope of the authorization.

The majority concedes that Baranek had a "subjective expectation of privacy" in a face-to-face conversation with his mother which took place in her home. The majority also acknowledges that there may or may not have been probable cause to place a "bug" in her home, and that the inadvertent failure of the defendants to properly hang up the telephone in effect operated as a "bug". Yet, today's decision could mean that if Government agents get lucky breaks and manage, through faulty telephone wiring or overly sensitive electronic surveillance equipment, to hear private face-to-face conversations inside individual homes, courts would not be required to suppress such conversations even though no warrant to search the home or place a "bug" inside had been secured.