STATE of Wisconsin, Plaintiff-Respondent,

v.

Rolando A. GIL, Defendant-Appellant.†

Court of Appeals

*No. 95–3347–CR. Submitted on briefs January 22, 1997.—Decided February 5, 1997.*

(Also reported in 561 N.W.2d 760.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul LaZotte* of *Legal Assistance Program* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. Waukesha county drug agents set up an undercover operation and were listening in the next room when Rolando A. Gil tried to rob and kill their informant. Even though the drug agents had their informant's consent to make a recording of the transaction, the electronic surveillance law in effect at that time stated that one-party consent recordings could only be used to prove drug charges, not the attempted robbery and homicide that the agents inadvertently captured on their tapes. We conclude that a literal interpretation of the surveillance law would frustrate the legislature's intent. We adopt the rule followed in other jurisdictions that permits the government to use surveillance evidence which falls within the "plain hearing" of law enforcement officers who are conducting otherwise authorized surveillance.

INTRODUCTION

The State charged Gil with drug conspiracy and as a party to the crimes of attempted robbery and attempted homicide for his involvement in the under-

cover drug sale. Although Gil has entered an *Alford*[1] plea to the attempted homicide charge, and the other two counts have been dismissed, this appeal concerns the trial court's evidentiary ruling that permitted the State to use the one-party consent recordings to prove all three charges, not just the drug charge as the surveillance law explicitly authorizes. In this appeal, Gil hopes for a reversal of this evidentiary ruling and the opportunity for a trial.

## BACKGROUND

We have gathered the facts regarding the events leading to the failed drug transaction from the complaint. While Gil maintains his innocence on the merits of the State's charges, Gil does not contest the State's version of why and how the drug agents set up their undercover operation. Moreover, Gil stipulated that the drug agents had their informant's consent to record the undercover drug transaction.

A detective from the Waukesha County Metropolitan Drug Enforcement Unit had an informant. On July 13, 1994, the informant told the detective that he had targeted someone interested in purchasing between five and ten pounds of marijuana. Three days later, the detective listened in as the informant called the target and arranged to meet the target at a local motel. The informant planned to sell the target between five and ten pounds of the drug at $800 per pound.

On July 18, the detective and other drug agents rented two adjoining motel rooms. They told the informant to use one room for the transaction. The drug agents then set up a variety of electronic monitoring equipment in the other.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

The target arrived at about 4:00 p.m. As the drug agents monitored the conversation, the target and the informant finalized the terms of the transaction. The target said that he would return around 7:00 p.m. with the money and that he might bring a friend to help him. That friend turned out to be Gil. The informant responded that he would be waiting with the marijuana.

The drug agents watched and waited as the target and Gil came back early that evening. After the target and Gil entered the room, the agents heard over their equipment a command to "get on the floor, get on the floor" and suspected that their informant was being robbed.

Although the agents tried to get into the room and surprise the target and Gil, the door had been dead bolted and one of the people inside was leaning against it. The agents then heard a gunshot and announced their presence. They heard several more gunshots before they were able to force themselves into the room and arrest the target and Gil.

According to the informant, when the target and Gil entered the room, Gil was holding a handgun, and they both told him to get on the floor and asked where the marijuana was. When Gil went to the bathroom to look for the marijuana, however, the informant was able to leap up and grab Gil from behind. After some struggle, Gil threw his handgun to the target, who took two shots at the informant. One hit the informant's hand and the other struck him in the chest.

The State subsequently filed a three-count information against Gil in September 1994. It charged him with being a party to the crime of attempted first-degree homicide with a dangerous weapon. *See* §§ 939.05, 939.32, 940.01(1) and 939.63(1)(a)2, STATS.

The State also brought a charge of attempted armed robbery, as a party to the crime. *See* §§ 939.05, 939.32 and 943.32(2), STATS. Finally, the State included a charge of conspiring in the possession of marijuana with the intent to deliver. *See* §§ 161.41(1x) and 161.41(1m)(h)3, STATS., 1993-94.

### THE TRIAL COURT'S EVIDENTIARY RULING

During pretrial proceedings, Gil and the State each took steps pertaining to the drug agents' surveillance evidence. The State filed notice of its intent to use the tape recordings of the aborted drug transaction pursuant to § 971.23(9), STATS., 1993-94. Gil moved for an in limine order excluding this evidence; he alleged that it was inadmissible under Wisconsin's Electronic Surveillance Law. The trial court entertained these issues at a hearing on November 11, 1994.

Gil based his evidentiary challenge to these recordings on the surveillance law which he alleged deemed them inadmissible. He did not raise any constitutional objection to the use of the tapes before the trial court, nor does he make any such claim on appeal. Moreover, Gil conceded before the trial court that the surveillance law permitted the State to use the tapes as proof on its one drug-related count.

However, the surveillance law then in effect, § 968.29(3)(b), STATS., 1993-94, stated that law enforcement could only use one-party consent recordings if the defendant was "accused of any act constituting a felony under ch. 161 or s. 939.30 or 939.31."[2] Thus, Gil

[2] The legislature has since amended the electronic surveillance law. The portion stating that one-party consent recordings could be used in cases involving "a felony under ch. 161 or s. 939.30 or 939.31" has been changed to state that such recordings can be used in cases involving "a felony." *See* 1995

claimed that the State was barred from using the tapes to prove the robbery and homicide counts.

The State did not directly dispute Gil's interpretation of the statute. Instead, it pointed to the facts of the case and explained that proving its drug conspiracy charge required evidence regarding the entire transaction. The State argued that Gil's involvement in the drug conspiracy necessarily included proof of his involvement in the attempted robbery and homicide and thus the surveillance evidence, from a practical standpoint, could not be confined to only the drug charge.

Although the trial court ultimately ruled that the tape recordings were admissible on all three counts, it did not adopt the State's position. The trial court's analysis starts with the background of the investigation. Here, the court found that the investigation was "solely geared" towards stopping drug activity. The trial court thus determined that the drug agents' plan to use one-party consent recordings to gather proof that Gil was involved in drug activity was sanctioned under the surveillance law. *See* § 968.29(3)(b), STATS., 1993-94; *see also* § 968.31(2)(b), STATS.

The trial court then turned to specific circumstances relating to how the drug agents inadvertently captured the evidence of Gil's other criminal activity. While the court acknowledged that the surveillance law says that the State can use one-party consent surveillance evidence to prove any crime if it secures prior judicial authorization to gather evidence in this manner, *see* § 968.28, STATS., the court reasoned that the

---

Wis. Act 30, § 1. However, the new rule, which would plainly permit the State to use its surveillance evidence to prove all three of its felony charges against Gil, only applies to recordings made after August 23, 1995. *See id.* at § 2.

particular circumstances of this case would have made it impossible for the police to get authorization because they were given no indication that their undercover drug sale would so quickly devolve into an attempted robbery and homicide. And while the trial court also acknowledged that the precedent, specifically *State ex rel. Arnold v. County Court*, 51 Wis. 2d 434, 187 N.W.2d 354 (1971), seemed on its face to strictly prohibit the State from using one-party consent surveillance when it did not have prior judicial approval, the court attempted to distinguish *Arnold* because it was not a "drug case." The trial court's decision to admit this evidence is perhaps best summarized by its observation that law enforcement should not be made to "suffer the consequences" of losing evidence from otherwise authorized surveillance because the defendant commits "additional criminal folly."

## STANDARD OF REVIEW

When we face a challenge to a trial court's evidentiary ruling, as Gil presents, we generally inquire whether the trial court misused its discretion. *See State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995). In such an analysis, we determine if the trial court applied the proper legal standard to the facts and if it did so in a logical manner. *See id.* In this case, however, Gil raises no objection to the trial court's factual analysis. Rather, he claims only that the trial court misinterpreted Wisconsin's surveillance law. We therefore owe no deference to the trial court's ultimate conclusion to admit this evidence because its interpretation of a statute is subject to de novo appellate review. *See DOR v. Milwaukee Brewers Baseball*

*Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983).

## WISCONSIN'S ELECTRONIC SURVEILLANCE LAW

We begin our analysis of Wisconsin's Electronic Surveillance Law with the legislative history surrounding its initial passage. *See* Laws of 1969, ch. 427. According to the written analysis compiled by then attorney general Robert W. Warren, the law was designed to give law enforcement the authority to record the conversation of people suspected of serious crimes. *See* Robert W. Warren, *Analysis of Assembly Bill 680*, 1 (1969).[3] The law was carefully drafted, however, to prevent the "indiscriminate or uncontrolled or unsupervised use of electronic surveillance by law enforcement officers or agencies." *See id.* at 2.

The supreme court recognized this legislative intent when it analyzed the law in *Arnold*. There, it faced a question similar to the one presented in this case regarding the admissibility of a one-party consent recording. In *Arnold*, a lieutenant sheriff set up a monitoring device, hoping to gather evidence against a local official whom he suspected was taking bribes. The lieutenant's informant consented to having a recording device set up in his office. The targeted official subsequently petitioned the supreme court to prohibit the State from using the tapes. *See Arnold*, 51 Wis. 2d at 435-36, 187 N.W.2d at 355.

In *Arnold*, the supreme court held that the tapes were inadmissible. *See id.* at 444, 187 N.W.2d at 359. The court began its analysis by noting that there was a

---

[3] This document and the other legislative history we cite to in this opinion are located in the microfiche files at the State Law Library in Madison, Wisconsin.

distinction between authorizing law enforcement to conduct electronic surveillance and permitting law enforcement to later disclose the results at trial. *See id.* at 442-43, 187 N.W.2d at 358-59. The court also explained how the surveillance law reflected a legislative effort to draw a compromise between law enforcement's need to detect and prosecute criminal activity and the public's desire for privacy. The court concluded that the legislature achieved this balance by making it "not unlawful" for law enforcement to conduct one-party consent surveillance, while still maintaining the "privileged character" of the results. *See id.* at 444, 187 N.W.2d at 359. So while the lieutenant did not violate any law by arranging the surveillance or listening to the tapes, the State could not use the tapes to prove its case against the targeted official. *See id.*

The express holding of the *Arnold* decision, however, is not directly pertinent to our analysis. What is important is the court's conclusion that the seemingly awkward legislative compromise of "authorize but not disclose" involved constitutional principles related to ensuring proper police conduct. While the *Arnold* court recognized that the admissibility of one-party consent recordings did not itself raise constitutional concerns, *see id.* at 439, 187 N.W.2d at 357, the court's statutory analysis nonetheless embodied constitutional principles.

The State argued in *Arnold* that the compromise of authorizing but not disclosing such recordings would deprive law enforcement of the "real gain" of such surveillance—solid proof to use in criminal cases. *See* Brief for Respondent at 14, *State of Wisconsin ex rel. Arnold v. County Court*, (No. 191) (1970). The court recognized, however, that a good way to secure the privacy rights of

the general public was to decrease the value that such incursions would have to law enforcement. Similar to how the "exclusionary rule" is intended to deter law enforcement from engaging in improper conduct by excluding the otherwise probative evidence gained from such conduct, *see Gilbert v. California*, 388 U.S. 263, 273 (1967), the legislature determined that assigning no evidentiary value to one-party consent recordings would discourage law enforcement from using this method to gather evidence. This analysis is confirmed by the supreme court's later statements regarding the *Arnold* rule in *State v. Smith*, 72 Wis. 2d 711, 242 N.W.2d 184 (1976). In this second look at the *Arnold* rule, the supreme court explained that lowering the evidentiary value of one-party consent recordings was intended to limit "their attractiveness" to law enforcement. *See Smith*, 72 Wis. 2d at 713-14, 242 N.W.2d at 185-86.

■

Twenty years later, however, the legislature reevaluated the surveillance law as well as the fundamental question of how society should balance the need to detect and prove criminal activity against the desire to maintain privacy. *See* 1989 Wis. Act 121, § 113. In the 1989 amendments, the legislature modified the rule which made *all* one-party consent recordings inadmissible. The legislature created an exception permitting the State to rely on these tapes to prove felony drug charges. *See* § 968.29(3)(b), STATS., 1993-94.[4]

---

[4] The Legislative Reference Bureau analysis of the bill which eventually became the 1989 amendments explained the current state of the law under *State ex rel. Arnold v. County Court*, 51 Wis. 2d 434, 187 N.W.2d 354 (1971), as follows:

In fact, the State relies on the 1989 amendments to support its current claim that the recording of the undercover drug transaction should also be admitted as proof of the crimes that, from the drug agents' standpoint, unpredictably arose out of the sale. Gil maintains, however, that the 1989 amendments were very narrow and made only a minor modification to the *Arnold* rule. He argues that the plain language of the 1989 amendments made such evidence admissible in only one special class of cases, felony drug cases. *See* § 968.29(3)(b), STATS., 1993-94.

We observe, however, that the 1989 amendments did more to the *Arnold* rule than Gil claims. As we explained above, the supreme court's rationale for deeming one-party consent surveillance evidence inadmissible was to discourage police from using this method of gathering evidence. The court recognized a legislative judgment that the benefits of greater privacy outweighed the costs associated with stifling law enforcement.

But when the legislature made one-party consent recordings admissible in drug cases, it gave law enforcement the green light to rely on this technique when fighting drug crimes. The 1989 amendments thus reflect a legislative conclusion that the benefits of increased privacy were no longer worth the costs of lost drug cases. In fact, we see that the Waukesha county drug unit received the legislature's message as it

[T]he state [can]not use the results of the intercepted communications in the one-party consent situation in the case-in-chief portion of a criminal prosecution. This bill specifically allows the introduction of evidence in court proceedings regarding the results of a lawful recording of an intercepted communication in the one-party consent situation if the proceeding concerns a felony involving a controlled substance.

Legislative Reference Bureau, Analysis of A.B. 9 (Nov. 1989).

designed the entire undercover operation around this evidence-gathering technique.

The legislative intent behind the 1989 amendments, moreover, has important implications to this case. Since the 1989 amendments tacitly authorized law enforcement to make one-party consent recordings when going after drug suspects, excluding the recording which captures Gil's involvement in the unexpected attempted burglary and homicide would serve no purpose. While excluding the tapes in *Arnold* enforced the legislature's belief that eavesdropping, even with one party's consent, was not a worthwhile way of fighting crime, the legislature later determined that eavesdropping is tolerable if that is what it takes to fight drug activity. Because the drug agents complied with the spirit of the 1989 amendments when they designed their surveillance, excluding the evidence of the other crimes that they inadvertently stumbled upon will not serve the public's interest through correcting any improper behavior by law enforcement. We thus concur with the trial court's observation that strict enforcement of the plain language of § 968.29(3)(b), STATS., 1993-94, would only end in the absurd result of giving Gil a "benefit" because he chose to attempt a robbery and a homicide, instead of just buying illegal drugs as the drug agents originally believed he would.

## THE "PLAIN HEARING" DOCTRINE

Having concluded that Wisconsin's Electronic Surveillance Law places no barrier on the introduction of the State's one-party consent recordings in drug cases, we conclude that the drug agents' happenstance capture of the additional evidence against Gil is similar to the theory underlying the "plain hearing" doctrine that is followed in other jurisdictions. We apply it here.

■
The "plain hearing" doctrine is an outgrowth of the "plain view" exception to the search warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971). Most discussions of this doctrine are set out as dicta,[5] and the few courts that have actually applied the doctrine have been asked to gauge whether police conduct violated the Fourth Amendment, a claim which we do not face. *See, e.g., United States v. Jackson*, 588 F.2d 1046, 1051 (5th Cir. 1979).

■
We have identified one decision which applied "plain hearing" constitutional principles as a check on federal law enforcement officers who were acting under the authority of the federal electronic surveillance law, 18 U.S.C.A. §§ 2510-22 (West Supp. 1997). *See United States v. Baranek*, 903 F.2d 1068 (6th Cir. 1990). Gil nonetheless argues in his supplemental brief[6] that Wisconsin's surveillance law provides "greater protection" for a defendant's privacy rights and hence we should not adopt a "4th Amendment analysis that effectively deprives [him] of that enhanced protection."

---

[5] The discussions of the "plain hearing" doctrine generally arise as theoretical observations by courts in cases involving the "plain view" doctrine. *See United States v. Williams*, 822 F.2d 1174, 1182, 1183 n.105 (D.C. Cir. 1987); *United States v. Pace*, 709 F. Supp. 948, 954 (C.D. Cal. 1989), *aff'd*, 893 F.2d 1103 (9th Cir. 1990); *State v. Jones*, 653 A.2d 1040, 1044 (Md. Ct. App. 1995), *rev'd on other grounds*, 682 A.2d 248 (1996); *State v. Slowikowski*, 743 P.2d 1126, 1133 n.3 (Or. Ct. App. 1987) (Young, J., dissenting), *aff'd*, 761 P.2d 1315 (1988).

[6] The parties did not discuss the "plain hearing" doctrine in their original briefs. We ordered the parties to prepare supplemental briefs addressing how this doctrine might apply to this case.

However, we agree with the State that the *Baranek* court merely used the Fourth Amendment case law for "guidance." And as we outlined above, Fourth Amendment principles, like the exclusionary rule, have previously guided Wisconsin courts through the interpretation of this state's surveillance law. *Cf. Smith*, 72 Wis. 2d at 714, 242 N.W.2d at 186 ("Assuming *arguendo* that the use of the device here constituted a constitutional or statutory violation which would *demand suppression of the direct fruits of its use*") (emphasis added). Accordingly, given the factual similarities between *Baranek* and this case, we adopt the reasoning of the Sixth Circuit and hold that the State may use its one-party consent recordings of Gil's criminal activity because it inadvertently fell within the "plain hearing" of law enforcement officers who were conducting authorized surveillance.

In *Baranek*, the federal agents had a judicially authorized wiretap on a phone and overheard a kitchen table conversation when the target left the tapped phone off its hook. During this kitchen table conversation, the defendant, who was only visiting the tapped residence, made several incriminating remarks about his involvement in various drug deals. *See Baranek*, 903 F.2d at 1069.

But when the government filed an indictment on this fortuitously obtained evidence, the defendant successfully argued to the district court that the kitchen table evidence should be excluded under the federal surveillance law.[7] The district court agreed that the kitchen table conversation was not a "wire communica-

---

[7] Wisconsin's Electronic Surveillance Law is patterned after the federal statute. *See Arnold,* 51 Wis. 2d at 443, 187 N.W.2d at 359.

tion" contemplated by the warrant authorizing the wiretap. *See id.* at 1070.

The court of appeals reversed the district court's ruling. Since the federal agents' "initial intrusion" was completely lawful, the court drew an analogy to the *Coolidge* decision and reasoned that the "inadvertent discovery" of the kitchen table conversation was also a lawful means of obtaining evidence. *See Baranek,* 903 F.2d at 1071.

■

While we approve of the extension of "plain hearing" principles to the issue of whether surveillance evidence was lawfully obtained under the pertinent statutory law, we observe that the *Baranek* decision repeatedly emphasized how the federal agents' exposure to the kitchen table evidence was "wholly fortuitous." *See id.* at 1070; *see also id.* at 1072 ("There is no doubt that the government got a lucky break of sorts here"). We think that the element of fortuity—or as we have described throughout this opinion, inadvertence—is the key factual issue which a trial court must resolve before it permits surveillance evidence to come in under the "plain hearing" exception. Because Wisconsin's Electronic Surveillance Law is premised on a concept of controlling law enforcement's *conduct* to protect society's privacy, a trial court reviewing a claim that aural evidence falls within this "plain hearing" doctrine must be certain that law enforcement just inadvertently came upon the evidence.

■

Returning now to Gil's specific claim, we observe that the trial court found that the drug agents' intent was "solely geared" towards drug activity. As a result, we are confident that the drug agents only inadvertently captured Gil's other criminal activity with their

recording devices. We thus uphold the trial court's decision to admit the surveillance evidence on all three charges.

APPLICATION OF § 971.31(10), STATS.

As we explained in the introduction, this appeal comes to us subsequent to Gil's entry of an *Alford* plea to the charges. Although § 971.31(10), STATS., preserves a defendant's right to seek review of "[a]n order denying a motion to suppress evidence," the State has vigorously argued that this rule does not apply here. Since Gil's evidentiary claim is confined to the statutory protection afforded under the surveillance law, the State argues that his appeal does not concern the "suppression" of evidence and that we should deem his evidentiary challenge waived. The State argues that the term "suppress" within § 971.31 is limited to evidentiary challenges relating to governmental misconduct, especially constitutional violations.

While the concurring opinion explores this issue in depth, we do not believe that we must resolve it before reaching the merits of Gil's claim. Even if Gil's claim does not involve the "suppression" of evidence, we have the necessary record to address it and his claim has enough legal significance to warrant our attention.

*By the Court.*—Judgment affirmed.

ANDERSON, J. (*concurring*). I write separately because I conclude that by his *Alford* plea[1] Gil waived his right to appeal the trial court's order refusing to exclude the one-party consent recordings from the trial of all three charges, not just the drug charges as authorized by § 968.29(3)(b), STATS., 1993-94.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

It is elementary "that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of non-jurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea." *Hawkins v. State*, 26 Wis. 2d 443, 448, 132 N.W.2d 545, 547-48 (1965). There is a very narrow exception to the guilty plea waiver rule found in § 971.31(10), STATS.:

> An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty.

We have discussed the narrow scope of this exception in *State v. Nelson*, 108 Wis. 2d 698, 702, 324 N.W.2d 292, 295 (Ct. App. 1982):

> From the unambiguous language of this statute, this court concludes that sec. 971.31(10), is applicable only in suppression situations. In addition, our supreme court made this clear when it stated: "Under the rule of statutory construction of *expressio unius est exclusio alterius*, this statute stops with the single exception it creates." *Foster v. State*, 70 Wis. 2d 12, 20, 233 N.W.2d 411, 415 (1975). Thus, by its express terms, this statute excepts only motions to suppress evidence and motions challenging the admissibility of a defendant's statement. This statute cannot be construed so as to except from the rule of waiver every motion to exclude evidence.

The supreme court has considered the scope of the exception in § 971.31(10), STATS. In a case concerning the right of the State to appeal pretrial orders, the

supreme court explained the difference between motions to suppress evidence and motions to exclude evidence. "The former generally bars admission of evidence at trial as a result of governmental misconduct, such as a constitutional violation. The latter generally involves only a violation of the rules of evidence." *State v. Eichman*, 155 Wis. 2d 552, 562-63, 456 N.W.2d 143, 147 (1990) (citations omitted). The supreme court went on to observe that it was unwilling to liberally construe the phrase "suppressing evidence" to encompass orders that merely exclude evidence. *See id.* at 563, 456 N.W.2d at 147.

It is obvious to me that we are to restrict the application of the § 971.31(10), STATS., exception to the guilty plea waiver rule. The exception becomes the rule if we liberally apply the exception to permit defendants to appeal orders denying motions to exclude evidence. The supreme court has limited the exception to those circumstances where governmental misconduct of constitutional proportions has occurred and the suppression of illegally obtained evidence or statements is necessary to deter and to discipline.

Although Gil styles his motion as a motion to suppress evidence, it is, in reality, a motion to exclude evidence based on a breach of the limitations on the use of one-party consent recordings found in § 968.29(3)(b), STATS., 1993-94. He concedes that the law enforcement officers complied with the requirements of the statute to conduct a one-party consent recording of what they expected to be a drug transaction. Gil does not assert that there was governmental misconduct rising to a constitutional level. Gil does contend that because he is challenging a violation of the rules of criminal procedure, he is not appealing from a violation of the rules of

evidence and his *Alford* plea did not waive his right to appeal this issue.[2]

The exception to the guilty plea waiver rule in § 971.31(10), STATS., is limited to violations of an individual's constitutional rights; no such violations occurred in this case. The operation of the exception is dependent upon the substance of the motion and not the label of the motion. I conclude that under the facts of this case, Gil's *Alford* plea constitutes a waiver of his right to appeal the trial court's order admitting the contents of the recording into a trial on all three charges.

Although I would prefer a stricter application of the guilty plea waiver rule, I recognize that the rule is a rule of judicial administration and not of judicial power. *See State v. Riekkoff,* 112 Wis. 2d 119, 124, 332 N.W.2d 744, 747 (1983). In this case, the issue raised is a legal question, the parties were given the opportunity to submit supplementary briefs, there are no disputed issues of fact, and the issue is one of sufficient public interest. The issue raised is therefore within the bounds of discretion previously exercised by this court,

---

[2] Gil argues that *State v. Maloney,* 161 Wis. 2d 127, 467 N.W.2d 215 (Ct. App. 1991), "establishes a precedent for treating motions to suppress evidence per strictures of the Wisconsin Electronic Surveillance Control Law as motions to suppress evidence within the meaning of § 971.31(10), STATS." Although Maloney entered a guilty plea after his motion to suppress a recording was denied and he appealed the order denying his motion, the question of whether the guilty plea waiver rule barred the appeal was not raised; therefore, the decision has no precedential value. Likewise, *State v. Smith,* 142 Wis. 2d 562, 419 N.W.2d 259 (Ct. App. 1987), *rev'd,* 149 Wis. 2d 89, 438 N.W.2d 571 (1989), is of no help to Gil because the applicability of the guilty plea waiver rule was not an issue.

and to provide a definitive answer to an unsettled area of the law, our consideration of the merits of Gil's appeal is appropriate. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). It is for this reason that I join in the reasoning and the result of the majority opinion.