STATE of Wisconsin, Plaintiff-Respondent,

v.

John David OHLINGER, Defendant-Appellant.†

Court of Appeals

*No. 2008AP135–CR. Submitted on briefs December 18, 2008.
—Decided March 12, 2009.*

2009 WI App 44

(Also reported in 767 N.W.2d 336.)

† Petition to review denied 9/11/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne L. Hagopian*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Using the internet, John Ohlinger found what he thought was a mother willing to let him engage in sexual conduct with her twelve-year-old daughter. In fact, Ohlinger had found a law enforcement officer pretending to be a potential accomplice to crime. The internet communication eventually led to a telephone conversation between Ohlinger and two female police officers, one posing as the mother and the other posing as the daughter. The telephone conversation was intercepted and recorded by another officer without a warrant. During the conversation, Ohlinger talked about his intent to engage in sex with the daughter, and a meeting was discussed. Later, a final meeting plan was made, and Ohlinger kept the appointment—resulting in his arrest and charges of attempted first-degree sexual assault of a child and child enticement.

¶ 2. Ohlinger moved to suppress the warrantless recording of the telephone conversation, alleging that it was inadmissible under Wisconsin's Electronic Surveil-

lance Control Law, Wis. Stat. §§ 968.27–.33 (2007–08).[1] The circuit court denied the suppression motion, and Ohlinger now challenges that ruling. Ohlinger's argument defies quick summarization. For now, it is sufficient to say that he contends that Wis. Stat. § 968.31(2)(b), commonly referred to as the one-party consent exception, does not apply when the intercepting person is a law enforcement officer and the party to the communication who consents to the intercept is also a law enforcement officer. We disagree and, therefore, affirm the circuit court.

## *Background*

¶ 3. Ohlinger created a web page on the internet indicating an interest in sexual activities with young girls. A male agent with the Wisconsin Department of Justice located Ohlinger's web page and, posing as a mother with a twelve-year-old daughter, began an e-mail conversation with Ohlinger. The male agent later recruited two female police officers from a local police department to play the parts of the fictitious mother and daughter for a planned telephone conversation with Ohlinger. During the ensuing forty-five-minute telephone conversation, Ohlinger expressed his desire and intent to engage in sex acts with both the "mother" and the "daughter." The female officers agreed to meet Ohlinger for the purpose of engaging in the sexual conduct discussed. The Justice Department agent recorded this telephone conversation without obtaining a warrant.

¶ 4. After follow-up telephone conversations, the female officers and Ohlinger made a final plan to meet

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version, unless otherwise noted.

at a truck-stop. After Ohlinger arrived at the truck-stop and made contact with the officer posing as the mother, he was arrested. He was later charged with attempted first-degree sexual assault of a child and child entice-ment, both as a persistent child sex offender.

¶ 5. Ohlinger filed a suppression motion, arguing that the contents of the telephone conversation must be suppressed under certain provisions of Wisconsin's Electronic Surveillance Control Law.[2] The circuit court denied the suppression motion and a trial to the court was held. At trial, the recording of the telephone conversation was the prosecution's centerpiece. The circuit court convicted Ohlinger of both charges, and he now appeals the suppression ruling.

### Discussion

¶ 6. We are asked to apply the one-party consent exception in Wisconsin's Electronic Surveillance Con-trol Law to undisputed facts. That is a question of law that we decide without deference to the circuit court. *State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989). We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning. *State ex rel.*

---

[2] Ohlinger also sought suppression of the contents of e-mails and instant messages. The State questions whether the e-mails and instant messages are covered by the Electronic Surveillance Control Law. At the same time, the State reasons that if we agree that the telephone intercept was properly admitted, then it follows that denial of the entire suppression motion was proper, regardless whether e-mails and instant messages are covered by the law. We agree and, consequently, only address the admissibility of the telephone intercept.

*Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We must construe a statute in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46.

¶ 7. The Electronic Surveillance Control Law governs the lawfulness and uses of electronic intercepts of communications. Pertinent here, if a warrantless intercept complies with the one-party consent exception, Wis. Stat. § 968.31(2)(b), the contents of the intercept may be disclosed in a felony proceeding. Wis. Stat. § 968.29(3)(b). Thus, the parties agree that if Ohlinger's telephone conversation with the two female officers was lawfully intercepted under the one-party consent exception, then the circuit court properly denied Ohlinger's suppression motion.

¶ 8. The one-party consent exception reads as follows:

(2) It is not unlawful . . .:

. . . .

(b) For a person acting under color of law to intercept a wire, electronic or oral communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

Wis. Stat. § 968.31(2)(b). This exception contains two requirements, one applicable to the person who intercepts a communication and a second applicable to one of the persons who is a party to the communication.

¶ 9. We will refer to the first requirement as the intercepting-person requirement. The intercepting person must be "a person acting under color of law," and the dispute in this case centers on whether a law enforcement officer may ever be a person fitting this "color of law" requirement.

¶ 10. We will refer to the second requirement as the consenting-person requirement. Under this requirement, one of the persons who is a party to the communication must either be the person who intercepts the communication or be a person who gives prior consent to the interception. Although there is no technical "consent" requirement *if* the second requirement is met because the intercepting person is also a party to the communication, this situation involves implicit consent, hence the shorthand reference to this statute as the one-party consent exception.

¶ 11. Ohlinger's general argument is that the one-party consent exception does not apply where, as here, the intercepting person is a law enforcement officer and the party to the communication who consents to the intercept is also a law enforcement officer. He seems to say that at least one of these parties must be a private citizen. When Ohlinger gets more specific, however, his argument is different—he asserts that the intercepting person may never be a police officer because the phrase "person acting under color of law" does not include law enforcement officers. Ohlinger's general and more specific arguments are inconsistent.

¶ 12. Ohlinger acknowledges, indeed embraces, the proposition that an intercepting person "acting under color of law" *may be* a law enforcement officer if the consenting person is a private citizen. Indeed, he cites to case law where the intercepting person is a law

enforcement officer acting with a cooperating private citizen who gives consent to the intercept.[3] He does this to support his argument that the statute is intended to cover law enforcement officers conducting intercepts, but only when the consenting party is a cooperating citizen. This contention is incompatible with Ohlinger's assertion that the intercepting person *may never be* a law enforcement officer because the statutory phrase "a person acting under color of law" is properly interpreted as excluding law enforcement.

¶ 13. Ohlinger makes no attempt to reconcile this inconsistency. This omission alone is sufficient reason to reject both his general and more specific arguments. Nonetheless, after providing some additional context, we will respond to Ohlinger's contention that the phrase "person acting under color of law" does not include persons who are law enforcement officers.

██

¶ 14. The phrase "a person acting under color of law" in WIS. STAT. § 968.31(2)(b) is patterned, along with much of the Electronic Surveillance Control Law, after the federal wiretapping law. *See State v. Gilmore*, 201 Wis. 2d 820, 825, 549 N.W.2d 401 (1996). When interpreting the Electronic Surveillance Control Law, we benefit from federal decisions considering counterpart provisions. *Id.*; *see also State v. House*, 2007 WI 79, ¶ 14, 302 Wis. 2d 1, 734 N.W.2d 140. As the State points out, federal cases discussing federal law recognize that law enforcement officers may be "person[s] acting un-

---

[3] Ohlinger cites to the following cases in which a private citizen consented to have a police officer record a communication between the private citizen and a suspect: *State ex rel. Arnold v. County Court of Rock County*, 51 Wis. 2d 434, 436–37, 187 N.W.2d 354 (1971), and *State v. Gil*, 208 Wis. 2d 531, 534, 561 N.W.2d 760 (Ct. App. 1997).

der color of law" for purposes of the federal wiretapping statute. *See, e.g., United States v. Passarella,* 788 F.2d 377, 379 (6th Cir. 1986); *United States v. Nelligan,* 573 F.2d 251, 254 (5th Cir. 1978); *United States v. Rich,* 518 F.2d 980, 985 (8th Cir. 1975); *United States v. Upton,* 502 F. Supp. 1193, 1196 (D.N.H. 1980).

¶ 15. Moreover, we agree with the State that the legislative history of Wisconsin's one-party consent exception supports the inclusion of law enforcement officers. *See State v. Milwaukee County,* 2006 WI App 229, ¶ 28, 297 Wis. 2d 339, 724 N.W.2d 916 (the legislative history of an unambiguous statute may be used "to show how that history supports [the] interpretation of a statute otherwise clear on its face"). Part of the history of WIS. STAT. § 968.31(2)(b) is an analysis by Attorney General Robert W. Warren, an analysis that we have recognized sheds light on the legislature's intent. *See State v. Gil,* 208 Wis. 2d 531, 539, 561 N.W.2d 760 (Ct. App. 1997). Attorney General Warren wrote:

> Section 968.31 specifically prohibits [in subsec. (1)] interception and disclosure of wire or oral communications, the use of any electronic, mechanical or other device to intercept any oral communication, disclosure of information obtained through interception of wire or oral communications, or use of the contents of any wire or oral communication knowing that the information was obtained in violation of law. [Subsection (2)] provides certain exceptions for telephone operators and *for law enforcement officers where they are either a party to the communication or one of the parties to the communication has given consent.*

1969 Wis. Laws, ch. 427, Legislative Drafting Record, Analysis of Assembly Bill 860, at 7, by Robert W. Warren (underlining in original; italics added). We

453

agree with the State that, by using the words "law enforcement officers" in place of the statutory language "person acting under color of law," Attorney General Warren plainly indicated that a law enforcement officer is a "person acting under color of law."

¶ 16. Ohlinger reasons that because the Electronic Surveillance Control Law (1) sets out a detailed procedure that law enforcement officers must follow when seeking to intercept a communication, (2) defines the term "investigative or law enforcement officer," and (3) does not define the term "person," it follows that the legislature's use of the phrase "person acting under color of law" must mean something different than a law enforcement officer. If it means something different, Ohlinger argues, it must mean that a "person acting under color of law" is a reference to a "private citizen who is actively cooperating with a law enforcement investigation," and not to law enforcement officers acting on their own. This reasoning is faulty.

¶ 17. First, the fact that the legislature could have specified law enforcement officers, rather than "person[s] acting under color of law," does not mean that "person acting under color of law" excludes law enforcement officers. One does not necessarily follow the other. As the State explains, Ohlinger's argument "would make sense . . . only if the Legislature intended that 'a person acting under color of law' should be interpreted to mean 'a law enforcement officer' *and nothing more.*" But plainly the legislature could have intended to use a term that includes *both* law enforcement officers and persons working with law enforcement.

¶ 18. Second, the fact that the legislature has specified that a warrant is required when law enforcement intercepts a communication without the consent of a party to the communication does not mean that a

454

warrant is required if at least one of the parties does consent. Indeed, it is the consent of one of the parties that provides a basis for not imposing a warrant requirement.[4] *See, e.g., Forster v. County of Santa Barbara,* 896 F.2d 1146, 1149 (9th Cir. 1990) ("A person does not have 'a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police.'" (quoting plurality opinion in *United States v. White,* 401 U.S. 745, 749 (1971))).

¶ 19. We next discuss Ohlinger's misplaced reliance on *Thomas v. Pearl,* 998 F.2d 447 (7th Cir. 1993). Ohlinger contends that this Seventh Circuit decision supports excluding law enforcement officers from "persons acting under color of law." In fact, *Thomas* supports the opposite proposition.

¶ 20. Relying on *Thomas,* Ohlinger equates law enforcement action with "state action," and then asserts that the Seventh Circuit has, in Ohlinger's words, "recognized that 'under color of law' cannot be read so broadly as to mean 'state action' for purposes of the

---

[4] The legislature's intent is evidenced by the Legislative Reference Bureau's Analysis of the bill that created the Electronic Surveillance Control Law, 1969 Assembly Bill 860:

"(3) To safeguard the privacy of innocent persons, the interception of wire or oral communications *where none of the parties to the communication has consented to the interception* should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court . . . ."

1969 Wis. Laws, ch. 427, Legislative Drafting Record, Analysis of 1969 A.B. 860 by the Legislative Reference Bureau, at 2 (quoting the federal "Omnibus Crime Control and Safe Street Act of 1968") (emphasis added).

federal wiretapping statute." Ohlinger quotes a portion of *Thomas* supposedly supporting his narrow interpretation:

> In [the context of the federal wiretapping statute], the broadest reading of color of law would hinder, rather than further the essential purpose of the act: to protect individuals from invasions of privacy.

*Id.* at 451.[5] Ohlinger reasons that if "under color of law" in the federal counterpart law does not mean "state action," it also does not mean police action in Wisconsin's law. Read in context, however, the discussion in *Thomas* not only fails to support Ohlinger's reasoning, it flatly contradicts it.

¶ 21. The subject of the wire tap in *Thomas* was a college basketball recruit named Thomas, and the "state actor" who did the wiretapping was a state-employed college basketball recruiter. *Id.* at 449. Thomas sued the recruiter, and the state university where he worked, alleging a violation of the federal wiretapping law. *Id.* The issue in *Thomas* was similar to the one here: was the government-employed actor a person acting "under color of law" when he secretly recorded telephone calls he was a party to. *Id.* at 449–50. The federal district court held that the recruiter's recording actions were exempt from liability under the federal counterpart to WIS. STAT. § 968.31(2)(b). *Thomas,* 998 F.2d at 449–50. More specifically, the district court concluded that "as an assistant basketball coach at a state university, [the recruiter] acted 'under color of

---

[5] Ohlinger also relies on *United States v. Andreas,* 216 F.3d 645, 660 (7th Cir. 2000), but that case adds nothing to his argument because the portion of *Andreas* cited by Ohlinger merely summarizes the portion of *Thomas v. Pearl,* 998 F.2d 447 (7th Cir. 1993), that we discuss.

law' when he taped conversations with Deon Thomas and Thomas' friends and relatives." *Id.*

¶ 22. Thus, on appeal, the Seventh Circuit was confronted with whether the phrase "under color of law" in the federal wiretapping law broadly protects government employees who, related to their employment, engage in wiretapping. It is in that context that the court explained that "the broadest reading of color of law would hinder, rather than further the essential purpose of the act." *Id.* at 451. The court explained:

> Liberal interpretations of § 1983's color of law language have the effect of increasing the number of people who can sue. By giving a wide reading to the terms of the statute, the Supreme Court narrowed (if not almost completely eliminated) the immunity enjoyed by government officials in favor of individuals who have been allegedly harmed by the state. Contrast this with the wiretapping act where color of law is used not to create a cause of action for injured plaintiffs but to exempt certain state officials from liability for their behavior. In this context, the broadest reading of color of law would hinder, rather than further the essential purpose of the act: to protect individuals from invasions of privacy.
>
> In the wiretapping setting, conflating color of law and state action would confer on every last employee of federal, state and local government a free pass to record conversations without the second party's consent.

*Id.* (citation omitted). Consequently, the Seventh Circuit disagreed with the district court, concluding that the basketball recruiter was not acting "under color of law." *Id.* At the same time, the court was quick to distinguish law enforcement officers from other government employees:

457

> Most cases that arise under the wiretapping act involve law enforcement officers gathering evidence against suspected criminals. The exemption in [the counterpart to Wis. Stat. § 968.31(2)(b)] for officials acting under color of law was evidently designed to aid police in ensnaring lawbreakers, not to unleash upon society millions of government workers—armed with recording devices strapped to their phones—seeking to invade the privacy of individuals neither suspected nor accused of committing crimes.

*Id.* Thus, rather than shore up Ohlinger's argument, *Thomas* directly supports the State's view that police officers are "person[s] acting under color of law" within the meaning of the Wisconsin wiretapping law.

¶ 23. Finally, we turn our attention to the State's assertion that Ohlinger's interpretation of the statute would lead to unreasonable results. The State points out that, under Ohlinger's interpretation of the one-party consent exception, a law enforcement officer may not lawfully intercept a communication, even with the consent of a citizen, because an officer is not a "person acting under color of law." At the same time, it is Ohlinger's view that a private citizen, acting at the behest of a law enforcement officer, may conduct the intercept if the citizen is a party to the communication or has the consent of one of the parties. Thus, adopting Ohlinger's interpretation would mean that the intercept in this case was not lawful but, if the police had recruited a private citizen to conduct the intercept, it would be lawful. We agree with the State that this is an unreasonable result.

### Conclusion

██

¶ 24. We reject Ohlinger's argument that Wis. Stat. § 968.31(2)(b), the one-party consent exception,

applies only when law enforcement officers work in concert with cooperating private citizens. We conclude that the exception may apply when one or more law enforcement officers are both the intercepting and consenting parties. Similarly, we reject Ohlinger's argument that the phrase "person acting under color of law" in § 968.31(2)(b) excludes law enforcement officers.

*By the Court.*—Judgments and order affirmed.