STATE of Wisconsin, Plaintiff-Respondent,

v.

Price G. TURNER, III, Defendant-Appellant.†

Court of Appeals

*No. 2013AP2101–CR. Submitted on briefs August 5, 2014.
—Decided August 26, 2014.*

2014 WI App 93

(Also reported in 854 N.W.2d 865.)

† Petition for Review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Edward John Hunt* of *Hunt Law Group, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald V. Latorraca*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Price Turner, III, appeals a judgment of conviction for repeated sexual assault of the same child, his fifteen-year-old daughter. He asserts the circuit court erred by denying his motion to suppress warrantless police recordings of incriminating statements he made to his daughter. Specifically, he contends that because his daughter was a minor at the time the statements were made, she was incapable of consenting to their interception under the one-party consent exception to the Wisconsin Electronic Surveillance Control Law (WESCL), Wis. Stat. §§ 968.27–.375.[1]

¶ 2. We conclude the proper test for minor one-party consent under the WESCL is set forth in *State v. Tomlinson*, 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

367. Under that test, the ability of a minor to consent to police interception of his or her conversations is a question of voluntariness. To determine whether a minor voluntarily gave consent, courts should consider the totality of the circumstances, including, but not limited to, a minor's age, intelligence, knowledge, and maturity. Fundamentally, a minor's consent must be the product of an "essentially free and unconstrained choice." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). We conclude it was in this case.

## BACKGROUND

¶ 3. On the morning of May 19, 2011, police received a request from a guidance counselor to respond to Hortonville High School based on the daughter's report that her father had been sexually assaulting her for several years. She was fifteen years old at the time of the report. She described inappropriate touching beginning when she was six or seven years old, followed by genital contact at age ten or eleven, and eventually intercourse, which occurred more frequently when she turned thirteen.

¶ 4. She also described her efforts to resist the assaults. She stated that as she got older, she realized what Turner was doing was wrong and told him to stop. She would also pull away when Turner began having intercourse with her, but he would not listen to her and sometimes became angry and would "storm out of the room." When she moved to a new residence with Turner at age fourteen, she told him that if he continued to assault her, she would run away.

¶ 5. Following his daughter's ultimatum, no further assaults occurred until approximately four weeks before her report to the guidance counselor. That night,

she woke up with Turner on top of her. Turner had inserted his penis in her vagina, and she could hear Turner groaning. She was "pretty certain" Turner ejaculated inside of her vagina.

¶ 6. After reporting the assaults, she agreed to wear a wireless recording device with which police could listen to her conversations with Turner. The daughter was recorded telling Turner, "[W]ell, you know how I said that I was supposed to get my period next week?" Before she could continue, Turner said, "I don't think, I don't, no I don't think you are pregnant or anything. Don't worry about that." She responded, "[B]ut you're the only guy I've ever got . . . ." Turner interrupted, stating, "I know, but I didn't do anything inside or nothing like that, I'm clean. It has to be forced in there, you know it doesn't just swim from the outside in. They don't last that long."

¶ 7. Police then entered the residence and arrested Turner. Turner waived his rights and confessed. He was ultimately charged with repeated sexual assault of the same child contrary to Wis. Stat. § 948.025(1)(d), a Class B felony.

¶ 8. Turner filed a motion to suppress the recorded statements and all derivative evidence. He asserted that police intercepted his communications in violation of the WESCL because his daughter was under age sixteen at the time and lacked the capacity to consent to the interception as a matter of law. An evidentiary hearing was held at which officers Brian Bahr and Brad Kuehl testified.

¶ 9. Bahr, a school liaison officer with the Hortonville Police Department, testified he met Turner's daughter at her school. She gave a detailed accounting of the prior sexual assaults, and they planned a recorded telephone call with Turner. Bahr made clear to

her that everyone would understand and they would not move forward if she felt it was "too difficult." She offered to help, appeared to understand the process and equipment, did not appear hesitant, and "was fully aware of what was going to happen." She was eventually taken to the police department for the phone call. She had a friend with her during portions of the interview at school, who also accompanied her to the police department.

¶ 10. Because of difficulties contacting Turner, Bahr suggested the use of a wireless body transmitter. Bahr contacted officer Kuehl from the Grand Chute Police Department, who was more familiar with body wires.[2] They explained to the daughter that she would wear a device on her body that would allow police to hear and record her conversation with her father. The daughter indicated that she understood and she agreed to wear the wire. A female administrative assistant placed the wire on the daughter, who did not appear upset or emotional. Afterward, she walked to her father's residence a few blocks away. At that point, approximately forty minutes had elapsed since Bahr suggested the wire. Police did not obtain the consent of either parent, nor did the daughter sign a consent form.

¶ 11. Kuehl testified he met the daughter for the first time at the police department on May 19, 2011, where she freely consented to wear the wire. She was afraid her father would discover it and asked multiple times if officers would be close enough to help her. Kuehl testified the daughter's "demeanor was good other than fear I think of going to actually talk to her father about the circumstances she did, but she had full

---

[2] Bahr testified the encounter between the daughter and her father was the first time Bahr had used a body wire.

understanding." Kuehl did not believe she responded differently to the wire—including her demeanor, questions, or actions—than any of the adult subjects he had worked with in the past.

¶ 12. The circuit court orally denied Turner's suppression motion. It first observed that no court had yet addressed whether a minor could consent to police interception of a communication under the WESCL's one-party consent exception, Wis. Stat. § 968.31(2)(b). However, drawing on consent cases in other contexts, the court concluded the "simple fact of minority status is not an impediment[]" to consent under § 968.31(2)(b). Rather, the court determined a subjective analysis was appropriate, under which the court would consider whether a person has the requisite "age, experience, education, background, intelligence, [and] capacity to understand what's going on." Finally, the court noted that although Turner was not challenging his daughter's subjective capacity, the facts demonstrated "a knowing and voluntary consent."

¶ 13. Following the denial of his suppression motion, Turner entered into plea negotiations with the State. He ultimately pled no contest to a reduced charge of repeated sexual assault of the same child contrary to Wis. Stat. § 948.025(1)(e), a Class C felony. Turner was sentenced to eight years' initial confinement and eight years' extended supervision. He appeals the denial of his suppression motion.

## DISCUSSION

■■■

¶ 14. This case concerns the scope of the WESCL's one-party consent exception, Wis. Stat. § 968.31(2)(b). The interpretation of a statute is a question of law we

review de novo. If the meaning of a statute is plain, we will not inquire further. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is generally given its common, ordinary, and accepted meaning. *Id.* We interpret a statute "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. Application of the one-party consent exception to undisputed facts is also a question of law we decide without deference to the circuit court. *State v. Ohlinger*, 2009 WI App 44, ¶ 6, 317 Wis. 2d 445, 767 N.W.2d 336.

¶ 15. "The [WESCL] governs the lawfulness and uses of electronic intercepts of communications." *Id.*, ¶ 7. The WESCL generally criminalizes the interception of wire, electronic, or oral communications and the disclosure or use of the contents of such communications. *See* Wis. Stat. § 968.31(1). However, it is not unlawful for "a person acting under color of law to intercept a wire, electronic or oral communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception." Wis. Stat. § 968.31(2)(b). This is known as the one-party consent exception.

¶ 16. At trial, any aggrieved person can seek to have an unlawfully intercepted communication and all derivative evidence suppressed. *See* Wis. Stat. § 968.30(9)(a). However, testimony regarding lawfully intercepted communications under Wis. Stat. § 968.31(2)(b), and evidence derived from those communications, is admissible in a felony proceeding as long as the party who consented to the interception is available to testify or another witness is available to

authenticate the recording.[3] *See* Wis. Stat. § 968.29(3)(b). Thus, as long as the conversation with Turner was lawfully intercepted under the one-party consent exception, Turner's suppression motion was correctly denied. *See Ohlinger*, 317 Wis. 2d 445, ¶ 7.

¶ 17. Turner's sole argument is that his daughter lacked the legal capacity to consent to the recording. He acknowledges that no Wisconsin court has determined whether a minor has the legal capacity to consent to the police interception of his or her conversations. He also acknowledges the WESCL does not define "consent" or specifically state whether a minor can lawfully consent to police interception. *See generally* Wis. Stat. § 968.27.

¶ 18. Turner therefore turns to dictionary definitions of "consent." "Resort to a recognized dictionary is permitted to establish the ordinary and common meaning of a word." *State v. Harvey*, 2006 WI App 26, ¶ 16, 289 Wis. 2d 222, 710 N.W.2d 482. "Consent" means "[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person[.]" Black's Law Dictionary 323 (8th ed. 2004). We agree with Turner that the legislature's use of the word "consent" in Wis. Stat. § 968.31(2)(b) presupposes that the person authorizing color-of-law interception has the legal capacity to do so.

¶ 19. Turner then observes that a minor is legally forbidden from consenting to certain things, regardless of whether he or she gave actual consent. For example, a child's consent to sexual contact with an adult is immaterial because the legislature has determined that a child " 'is not competent to give consent and that

---

[3] Although the State did not present the daughter's testimony at the suppression hearing, Turner does not assert the officers who did testify were incapable of authenticating the recording of his conversation with his daughter.

sexual contact or . . . intercourse with such a person is a criminal offense." ' *State v. Fisher*, 211 Wis. 2d 665, 670–71, 565 N.W.2d 565 (Ct. App. 1997) (quoting *State v. Kummer*, 100 Wis. 2d 220, 227, 301 N.W.2d 240 (1981)). Turner notes that child witnesses are treated differently than adult witnesses in sexual assault prosecutions. *See generally* WIS. STAT. § 908.08. Among other things, he also observes that the Children's Code gives guardians authority to consent to marriage, military service, medical treatment, and obtaining a motor vehicle license. *See* WIS. STAT. § 48.023(1).

¶ 20. From this, Turner concludes it is "[c]learly . . . Wisconsin's legislative policy to ordinarily require a parent's or guardian's input on all important matters."[4] Turner apparently also considers parental involvement in a one-party consent situation a component of Fourteenth Amendment due process, noting that parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57 (2000); *see also Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶ 19, 293 Wis. 2d 819, 719 N.W.2d 508.

¶ 21. We easily dispense with Turner's Fourteenth Amendment argument. His argument is supported only by general statements that are not developed themes reflecting legal reasoning. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court will decline to review issues inadequately

---

[4] Turner's argument appears to adopt the reasoning of this court in *State v. Duchow*, 2007 WI App 162, ¶ 27, 303 Wis. 2d 744, 735 N.W.2d 192. A petition for review was granted, and our supreme court reversed our *Duchow* holding on alternative grounds, explicitly declining to reach the issue of whether the WESCL permits vicarious consent by a parent. *See State v. Duchow*, 2008 WI 57, ¶ 2 n.4, 310 Wis. 2d 1, 749 N.W.2d 913.

briefed). Turner cites no case law holding that, as a matter of due process, law enforcement must obtain parental consent before obtaining the assistance of a minor in a police investigation.[5] Nor does he cite due process case law even arguably analogous to the present case.[6]

¶ 22. We therefore shift to Turner's argument that, as a matter of law, a minor lacks capacity to consent to police interception of his or her conversations under WIS. STAT. § 968.31(2)(b). While Turner is correct that, as a matter of legislative judgment, a minor cannot provide consent in many situations, he has failed to persuade us the legislature foreclosed a

[5] The notion that the WESCL requires parental consent, under the facts of this case, is absurd. Turner, the father, was the alleged wrongdoer, and the mother was minimally involved in the daughter's upbringing. Turner's motion affirmatively asserted he would not have consented to the recording. We agree with the State that requiring parental consent under these circumstances would frustrate the State's legitimate interest in protecting children from abuse by caregivers. It seems unlikely the legislature would require police to obtain vicarious consent from an alleged wrongdoer while at the same time imposing a mandatory duty upon law enforcement agencies to timely investigate reports of abuse. *See* WIS. STAT. § 48.981(3)(a), (b).

[6] The two cases Turner does cite, *Troxel v. Granville*, 530 U.S. 57 (2000), and *Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, 293 Wis. 2d 819, 719 N.W.2d 508, are inapposite. *Troxel* involved a "breathtakingly broad" statute permitting a court to "disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Troxel*, 530 U.S. at 67. In *Nicholas C.L.*, we noted in passing that "best-interest-of-the-child test in custody disputes between a parent and a third party" disregarded a parent's constitutional rights and was therefore incomplete. *Nicholas C.L.*, 293 Wis. 2d 819, ¶¶ 14, 16.

minor from consenting to color-of-law interception of his or her conversations. Indeed, Turner concedes the WESCL is silent on that point. The statute, as a plain-language matter, neither endorses nor prohibits the practice.

■

¶ 23. The State's position, which we accept, is that the legislature meant to incorporate "the principles of consent as the term is used in Fourth Amendment jurisprudence[]" when drafting the WESCL. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is the federal counterpart to the WESCL and is the law upon which the Wisconsin surveillance statutes are patterned. *State v. House*, 2007 WI 79, ¶ 14, 302 Wis. 2d 1, 734 N.W.2d 140. "Our interpretation of the state statutes therefore benefits from the legislative history and intent of Title III and from federal decisions considering Title III." *Id.*, ¶ 14 (citing *State v. Gilmore*, 201 Wis. 2d 820, 825, 549 N.W.2d 401 (1996)). We have previously relied on the consensus of federal courts to establish the scope of the WESCL's one-party consent exception. *See State v. Riley*, 2005 WI App 203, ¶ 12, 287 Wis. 2d 244, 704 N.W.2d 635.

¶ 24. Title III, like the WESCL, was designed to incorporate the Fourth Amendment's protective procedures into a comprehensive statutory scheme governing wiretapping and other forms of surreptitious surveillance. *Id.*, ¶ 15. Title III codified "the requirements of the Fourth Amendment as it was then understood to apply to the interception of communications, to supplement the Fourth Amendment's protections with solely statutory safeguards and procedures, and to facilitate the interception of criminal conversations in appropriate investigations . . . ." *United States v. Ferrara*, 771 F. Supp. 1266, 1270 (D. Mass. 1991). The one-party con-

sent exception under WIS. STAT. § 968.31(2)(b) appears to be an extension of the rule that the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *See Hoffa v. United States*, 385 U.S. 293, 302 (1966); *see also State v. Duchow*, 2008 WI 57, ¶ 30, 310 Wis. 2d 1, 749 N.W.2d 913 ("A person's reasonable expectation of privacy is compromised when he or she knowingly exposes statements to others, rather than keeping them to himself or herself.").

¶ 25. We therefore find cases involving a minor's consent to a Fourth Amendment search highly persuasive in determining the scope of the WESCL's one-party consent exception. In *Gregoire v. Henderson*, 302 F. Supp. 1402, 1403–04 (E.D. La. 1969), police tracked a murder suspect to his brother's home, where the door was answered by a seventeen-year-old boy who resided there. The boy invited the officers into the residence, where they discovered the suspect's personal effects. *Id.* at 1404. Following a conviction, the defendant argued the boy "was 'under age' and thus not capable of giving his consent" to search. *Id.* at 1407. The court rejected this argument, stating it could not find

> any authority to support the proposition that a seventeen year old boy cannot, as a matter of law, give consent for a search of the premises in which he lives with his family. The age of the boy should, of course, be considered by the trier of fact to be one factor in determining whether or not consent was freely given.

*Id.* Thus, the court declined to adopt a per se rule prohibiting a minor from consenting to search, preferring instead to consider the child's age and maturity as

affecting the voluntariness of the consent. *See State v. Folkens*, 281 N.W.2d 1, 4 (Iowa 1979) (citing *Gregoire*, 302 F. Supp. at 1407) ("The minority of the consenting party does not in itself vitiate the consent, but does bear on the voluntariness of it."). A valid consent search requires voluntary consent and words, gestures, or conduct demonstrating that consent. *State v. Artic*, 2010 WI 83, ¶ 30, 327 Wis. 2d 392, 786 N.W.2d 430.

¶ 26. Unsurprisingly, Wisconsin law is fully consistent with the federal view that a minor may voluntarily consent to a search of his or her home. In *Tomlinson*, 254 Wis. 2d 502, ¶ 7, a girl, approximately fifteen or sixteen years of age, permitted police to enter the home of a murder suspect. The defendant was ultimately convicted using evidence discovered in the home and, on appeal, challenged the girl's authority to consent to the police entry. *Id.*, ¶ 21. After concluding the officers could have reasonably believed the girl was the suspect's daughter, our supreme court next considered whether "a minor child has the authority to consent to police entry of his or her parents' home . . . ." *Id.*, ¶ 29. The court did not set forth a per se rule prohibiting police from obtaining a minor's consent to search.

¶ 27. Instead, *Tomlinson* set forth the factors courts should consider when determining whether consent was voluntarily given. The court concluded a minor's ability to consent depends "on a number of factors, and courts must look at the totality of the circumstances to make such a determination." *Id.*, ¶ 31. "The primary factors . . . are the child's age, intelligence, and maturity, and the scope of the search

or seizure to which the child consents." *Id.* Also important are "the extent to which the child has been left in charge, and the extent to which the parent has disclosed his or her criminality to the child." *Id.*

¶ 28. To be sure, not all of the *Tomlinson* factors are meaningful when determining the lawfulness of one-party consent surveillance versus a home search. For example, the scope of the search and the extent to which a child has been left in charge are important in the home search context because "there are parts of a family's home where the parents have an increased privacy interest, and where the child could not reasonably give consent to a search, even though a parent could." *Id.*, ¶ 32. For purposes of the one-party consent exception, the location or content of the conversations does not matter, nor does the degree of the child's authority. That is because an individual can have no justifiable expectation that the recipient of his or her communications will not reveal them to police. *See United State v. White*, 401 U.S. 745, 749 (1971) (holding that *Katz v. United States*, 389 U.S. 347 (1967), does not apply to police interception of communications using a participant in the conversation).

 

¶ 29. Consistent with *Gregoire, Folkens,* and *Tomlinson,* we conclude that when determining whether a minor has the capacity to consent to color-of-law surveillance under Wis. Stat. § 968.31(2)(b), courts should consider the totality of the circumstances to determine whether consent was voluntarily given. Voluntariness cannot be summed up in a " 'talismanic definition.' " *Artic,* 327 Wis. 2d 392, ¶ 32 (quoting *Schneckloth,* 412 U.S. at 224). An individual's consent to color-of-law interception "must be 'an essentially free and unconstrained choice,' not 'the product of duress or

coercion, express or implied.' " *See id.* (quoting *Schneck-loth*, 412 U.S. at 225, 227) (citations omitted). "Consent is not voluntary if the state proves 'no more than acquiescence to a claim of lawful authority.' " *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968)).

¶ 30. In considering the totality of the circumstances, the court should consider the minor's knowledge, intelligence, and maturity. The age, intelligence, and maturity of a child are important because, as a child gets older, he or she will have a greater capacity to understand events affecting his or her life and will exercise a greater responsibility over his or her own affairs. *See Tomlinson*, 254 Wis. 2d 502, ¶ 32. It is also appropriate to consider the minor's education and state of mind, the demeanor and tone of voice of the officers requesting consent, the location at which consent was given, and the duration of the encounter. *See People in Interest of R.A.*, 937 P.2d 731, 738 (Colo. 1997) (en banc). The court should also consider the police tactics used to elicit consent and any other relevant circumstances. *See Artic*, 327 Wis. 2d 392, ¶ 33 (factors include police use of deception, trickery, or misrepresentation, threats or physical intimidation, the conditions attending the request, prior experience with the police, and whether the police informed the individual he or she could refuse consent).

¶ 31. In this case, Turner does not challenge the circuit court's factual findings. Nonetheless, we conclude the officers' testimony at the suppression hear-

ing established the requisite consent.[7] "The question of voluntariness involves the application of constitutional principles to historical facts." *State v. Ward*, 2009 WI 60, ¶ 17, 318 Wis. 2d 301, 767 N.W.2d 236. We will uphold a circuit court's findings of historical fact unless they are clearly erroneous. *Id.* A finding of historical fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence. *Id.* "We independently review the application of constitutional principles to those facts." *Id.*

■■■

¶ 32. Here, the daughter was well into her teens at the time she authorized the police interception. She was taking regular high school classes and there is no indication she required remedial coursework. Both officers testified her demeanor was not unusual. She demonstrated an appropriate concern for her safety. The daughter initially consented to a recorded phone call while she was at the high school, an arguably neutral location. Although she was later taken to the police department where she agreed to wear a wire, there is no indication whatsoever that police used tactics designed to overcome her will. Rather, the daughter was repeatedly told she would not be made to comply if she felt it was "too difficult," and she had a friend accompany her to the police department. Both officers testified the daughter was willing to assist them. The entire operation lasted about the length of one school day. We agree wholeheartedly with the circuit court that "the facts support the conclusion

---

[7] Although we do not ordinarily address issues not raised in the briefs, we elect not to adhere to this rule of judicial administration in this instance so we may illustrate for future courts and litigants the proper application of the test we have adopted.

that [consent] was a considered judgment by someone acting with a reasonable motivation under the circumstances . . . ."

*By the Court.*—Judgment affirmed.