# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 14, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0242-MR

JUSTIN RADCLIFF                                   APPELLANT

ON APPEAL FROM BOONE CIRCUIT COURT
V.              HONORABLE JAMES R. SCHRAND, JUDGE
NO. 21-CR-00432

COMMONWEALTH OF KENTUCKY                  APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Justin Radcliff appeals as a matter of right[1] from the Boone Circuit Court judgment convicting him of one count of first-degree rape and two counts of first-degree rape, victim under 12 years of age. The jury recommended a sentence of thirty-years' imprisonment, which the trial court imposed. For the following reasons, we affirm.

## I. Facts and Procedural Background

Radcliff was charged with one count of first-degree rape and two counts of first-degree rape, victim under 12 years of age, after his fiancée Amanda's child, L.R., and L.R.'s friend, A.B., made accusations of sexual assault to their

---

[1] KY. CONST. § 110(2)(b).

school counselor.[2] In 2018, Radcliff began dating Amanda, who at the time had one child, L.R. Soon after they began dating, Radcliff moved in with Amanda; they then got engaged and had a child in 2019.

At their home, Radcliff would frequently invite L.R., who was 11 years old at the time, into his bed for "cuddle time." Amanda eventually asked L.R. if "cuddle time" was innocent or if something else was happening, and L.R. disclosed that Radcliff had stuck his fingers inside her vagina during "cuddle time." Amanda questioned Radcliff about the incidents, with L.R. present, and Radcliff responded that L.R. had confused digital rape with the lower abdominal massages he would give them. Amanda did not call the police or kick Radcliff out of the house, but rather convinced herself the incidents never happened and were a product of her anxiety. L.R. felt isolated by Amanda's decision and chose not to report the second incident of Radcliff's abuse to Amanda.

Shortly after L.R.'s disclosure of the first incident, Amanda permitted several of L.R.'s classmates to come over for a slumber party to celebrate L.R.'s 12th birthday. Among the attendees was L.R.'s 12-year-old friend, A.B., who stayed over an extra night after the slumber party. During the second night of A.B.'s stay, Radcliff entered L.R.'s bedroom, put his hand over A.B.'s mouth,

---

[2] Both L.R. and A.B. are biological females who identify as male. Their biological sex is relevant because the rape charges stem from allegations Radcliff penetrated their vaginas. The appellate briefs point out, and the record confirms, inconsistencies in the accusers' preferred pronouns. For the sake of clarity, this Court will refer to the individual accusers as she/her.

took her pants off, held her hands over her head and penetrated A.B.'s vagina with his penis.

Eventually, L.R. and A.B. (separately) reported the incidents to their school counselor, Stacy Russell. The day L.R. reported, the school contacted law enforcement, to whom L.R. disclosed that she had told her mother about the abuse, but Amanda had done nothing. L.R. agreed to do a recorded phone call with Radcliff, during which Radcliff admitted to touching L.R. When Radcliff arrived at the school to pick up L.R., police arrested him. Thereafter, A.B. reported her incident of sexual abuse to the school counselor.

Radcliff was indicted by a Boone County Grand Jury on one count of first-degree rape as to A.B. and two counts of first-degree rape, victim under 12 years of age, as to L.R. While awaiting trial, Radcliff sent two letters to Amanda from jail, both of which Amanda read aloud at trial. In the first letter, he asked her to speak with L.R. and beg her and A.B. to give him a second chance and apologized for "invading their privacy." In the second letter, Radcliff instructed Amanda to offer L.R. and A.B. $100 each and a trip to the mall if they would admit that they lied. Radcliff's letter implored Amanda to tear up the letters after reading them.

Following a two-day trial, the jury convicted Radcliff of all three counts and the trial court imposed the jury's recommended thirty-year sentence. Radcliff now appeals.

## II. Analysis

### A. *The trial court properly denied Radcliff's motion for separate trials.*

Radcliff argues that the trial court abused its discretion by denying his motion to sever the charges involving L.R. from those involving A.B. and to hold separate trials. We disagree.

Trial courts are vested with great discretion in deciding whether to join or sever offenses and their decision will be disturbed on appeal only if an abuse of that discretion is shown. *Davidson v. Commonwealth*, 548 S.W.3d 255, 258 (Ky. 2018). An abuse of discretion occurs if the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principle." *Lopez v. Commonwealth*, 459 S.W.3d 867, 873 (Ky. 2015) (quoting *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007)).

This Court reviews a trial court's decision on joinder/severance using a two-step inquiry: first, whether the offenses were properly joined in a single indictment under RCr[3] 6.18 and second, whether RCr 8.31 required separate trials.

RCr 6.18 provides:

Two (2) or more offenses may be charged in the same complaint or two (2) or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate count for each offense, if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan.

---

[3] Kentucky Rules of Criminal Procedure.

Meanwhile, RCr 8.31 states, in relevant part: "If it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses or of defendants in an indictment, information, complaint or uniform citation or by joinder for trial, the court shall order separate trials of counts, grant separate trials of defendants or provide whatever other relief justice requires."

In denying Radcliff's motion for separate trials, the trial court found that the offenses were of similar character and inextricably intertwined. Specifically, it found that:

> In this matter, the alleged sexual abuses here both involved minor children of similar ages (L.R. was 11 years old and A.B. was 12 years old), occurred at the Defendant's house, and occurred in the same room. At the time these alleged incidents occurred, the mother of L.R. was allegedly present in the house. Additionally, the alleged incident involving A.B. took place when L.R. was present in the room with Defendant and A.B. during L.R.'s birthday sleepover weekend. Lastly, Defendant is alleged to have written a letter to L.R.'s mother offering to pay both victims to recant their stories.

While Radcliff did not challenge the adequacy of the indictment below, he now emphasizes the differences in the offenses: (1) though L.R. and A.B. were of similar age, the first-degree rape statute used in this case – ages 11 and 12 – require different proof, elements and jury instructions; (2) the incidents involving L.R. and A.B. occurred in the same house, but not in the same room; (3) the letters he wrote would have been admissible in each separate trial; (4) the sexual crimes were different as L.R. was allegedly penetrated with Radcliff's fingers, while A.B. was allegedly penetrated with Radcliff's penis; (5) A.B. provided a specific date for the incident, but L.R.'s allegations were within a one-year period preceding A.B.'s; and (6) the jury's indication that it was

5

struggling to unanimously agree on the third verdict (as to A.B.) implies prejudice.

We find these distinctions lacking for purposes of severance. As the Commonwealth notes, evidence of the separate crimes against L.R. and A.B. would have been admissible in separate trials under KRE 404(b). That rule states that evidence of other crimes, wrongs, or acts may be offered at trial:

> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Here, the acts of sexual abuse were of similar character and demonstrated Radcliff's motive, opportunity, intent, plan and absence of mistake or accident. L.R. and A.B. were close friends of a similar age; they were both biological females; all of the sexual acts took place in L.R.'s home when Amanda was at home; the Commonwealth alleged Radcliff penetrated the victims' vaginas – with his fingers in L.R.'s case and his penis in A.B.'s case; and both victims were young people over whom Radcliff had authority – he was acting as L.R.'s stepfather and was an adult to whom A.B.'s care, as a minor child, was entrusted.

Moreover, the evidence of Radcliff's acts of abuse against L.R. and A.B. were inextricably intertwined. After L.R. informed her mother of the abuse, Amanda chose to host a slumber party at which A.B. was sexually abused. L.R. was in the room when Radcliff raped A.B. and testified about the incident

6

at trial. Both L.R. and A.B. reported the abuse to the same school counselor. And Radcliff wrote letters to Amanda from jail about the incidents involving both children. Lastly, Radcliff's defense at trial was that L.R. and A.B. conspired together to lie: this defense would not have been possible in a severed trial without mentioning the other victim.

Since evidence of each offense would have been admissible under KRE 404(b) in separate trials, the trials need not be severed. In addition to the evidence being admissible under KRE 404(b), the trial court's ruling conformed with RCr 6.18. *See, e.g., Whaley v. Commonwealth*, 567 S.W.3d 576 (Ky. 2019) (holding that severance was not required when sexual assaults of minor children took place in the same home at a slumber party, at which the assaulting adult was in an authoritative role, since the evidence showed opportunity, intent, plan, absence of mistake, and modus operandi); *Elam v. Commonwealth*, 500 S.W.3d 818 (Ky. 2016) (severance of sexual crimes against different victims not required when the alleged crimes are part of defendant's common scheme or plan to sexually assault little girls of the same age who depended on him and regularly stayed at his home); *Montgomery v. Commonwealth*, 320 S.W.3d 28 (Ky. 2010) (holding that pattern of conduct for KRE 404(b) purposes was satisfied when defendant had nighttime contact at the same house with his stepdaughter victim and her three overnight guests). Under these circumstances, the trial court's joinder of the trials was not an abuse of its discretion, nor has Radcliff demonstrated that he suffered

7

prejudice under RCr 8.31 connected with the joinder sufficient to warrant a new trial.

### B. *The trial court correctly denied Radcliff's motion to suppress the recorded phone call between Radcliff and L.R.*

Radcliff next alleges that the trial court erred by denying his motion to suppress the recorded phone call between him and L.R. In support, Radcliff cites protections provided by the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution against warrantless searches and asserts that L.R., as a minor, lacked the ability to consent to the recording of phone call, thus rendering it unlawful. The trial court denied his motion to suppress and overruled his renewed objection at trial.

The recording of the phone call was obtained following L.R.'s disclosure to the school counselor that Radcliff had touched her. Law enforcement came to the school to meet with L.R., and L.R. informed the officers that her mother had taken no action after learning of the abuse. At the officers' suggestion, L.R. agreed to place a recorded phone call to Radcliff, which was played for the jury at trial:

> L.R.: Justin, I missed the bus I was . . . are you around Mom?
>
> Radcliff: No.
>
> L.R.: Okay, good. I missed the bus because I was thinking about telling the counselor what you did.
>
> Radcliff: Do what?
>
> L.R.: I was thinking about telling the counselor what you did but then I chickened out, and I missed the bus. It bothers me because I feel like you will do it again to somebody else.

8

Radcliff: Who?

L.R.: Anybody else.

Radcliff: What are you talking about?

L.R.: You know what I'm talking about. You touched me.

Radcliff: Okay, but where are you at right now?

L.R.: I'm in school.

Radcliff: Okay, well, I guess I'll be there shortly to get you. Can you go outside and wait?

L.R.: No.

Radcliff: Why?

L.R.: They're not going to let me stand outside.

Radcliff: Okay.

L.R.: We really need to talk about what you did though.

Radcliff: Okay, well, I'm getting ready to head out to come get you. I don't have time to sit and talk right now though.

L.R.: No, I just said we need to talk about this. I don't care if you don't have time.

Radcliff: We can talk about this, yes. Me and you. You can ride with me to Kroger.

L.R.: No, I want to talk about this now. Don't come here.

Radcliff: I have to come get you from school if you're sitting there.

L.R.: No, you don't. I don't trust you.

Radcliff: Come on now.

L.R.: Don't "come on now" me.

Radcliff: Are we going to really go through this?

9

L.R.: Yes, we are. You shouldn't have touched me.

Radcliff: Yes, I'm aware. And I've admitted to that, and I'm sorry. Can we not do this right now? Can I just come get you from school and drop you off?

L.R.: No. Can Mom get me?

Radcliff: No, because she's got to work.

L.R.: Please? Just ask her.

Radcliff: She's at work. I cannot have her leave work to come get you. I'm sorry. I am on my way to get you. Please, just, let's get you home. We'll talk. Please.

L.R.: You'll have to come inside to get me.

Radcliff: Are you alone right now?

L.R.: Yes, I'm alone.

Radcliff: Okay, well look. I love you, and I promise nothing's going to happen again. But I need you to understand that I can't afford this shit right now. I love you. I'm on my way there.

L.R.: Then why'd you do it?

Radcliff: Lapse of judgment. I'm sorry. Please, just, let's not do this right now. I'm almost to the school to get you. Please.

L.R.: Okay. Whatever.

Radcliff: Okay. I love you. I'll be there shortly.

L.R.: Bye.

Radcliff: Bye.

On appellate review of a trial court's denial of a motion to suppress, the trial court's factual findings, if supported by substantial evidence, are reviewed for clear error, and its application of the law to the facts is reviewed *de novo*. *Bond v. Commonwealth*, 453 S.W.3d 729, 732 (Ky. 2015).

10

Eavesdropping is defined as overhearing, recording, amplifying, or transmitting "any part of a wire or oral communication of others without the consent of at least one (1) party thereto by means of any electronic, mechanical or other device." KRS 526.010. In other words, Kentucky is a one-party consent state for purposes of recording conversations. *Major v. Commonwealth*, 177 S.W.3d 700, 710 (Ky. 2005) ("The practice of recording conversations with the consent of at least one party to the conversation has long been recognized in Kentucky jurisprudence[]").

Radcliff argues that L.R.'s age, intelligence, knowledge, and maturity did not meet the threshold for consent; in support, he makes vague allegations that L.R. was failing several classes in school and suffering from depression and other mental health disorders at the time. However, even if that could be proven, he does not state specifically how L.R.'s ability to consent was affected by these issues.

Instead, Radcliff primarily bases his lack of consent argument on L.R.'s age at the time. Neither he nor the Commonwealth present any Kentucky law on a minor's capacity to serve as one party consent for eavesdropping purposes. Instead, Radcliff directs this Court (as he did the trial court) to consider a Wisconsin Court of Appeals case, *State v. Turner*, 854 N.W.2d 865 (Wis. Ct. App. 2014), for guidance in ruling. Wisconsin, like Kentucky, is a one-party consent state for recording phone calls. In *Turner*, the defendant similarly attempted to suppress his minor daughter's consent to a warrantless, recorded phone call with him in which he made incriminating statements. *Id.*

11

at 868.  Turner argued because his daughter was a minor at the time, she was incapable of consenting for purposes of the state's wiretapping laws.  *Id.* Ultimately, the *Turner* court upheld the minor's ability to consent, focusing on the voluntariness of the consent under the totality of the circumstances, "including, but not limited to, the minor's age, intelligence, knowledge, and maturity."  *Id.*  "It is also appropriate to consider the minor's education and state of mind, the demeanor and tone of voice of the officers requesting consent, the location at which consent was given, and the duration of the encounter."  *Id.* at 874.  "Fundamentally, a minor's consent must be the product of an 'essentially free and unconstrained choice.'"  *Id.* at 868 (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973)).

In its order denying Radcliff's motion to suppress, the trial court acknowledged that the officers did not seek to contact L.R.'s mother before recording the call but noted the reason for that: L.R. had informed the officers that Amanda had taken no action after learning of the abuse.  The court's order further discusses its personal observations of, and interactions with, L.R. in assessing her capacity to consent.  The trial court applied the totality of the circumstances test in determining L.R.'s ability to consent, reasoning as follows:

> Under the totality of the circumstances, the Court finds L.R. was able to and did voluntarily consent to the recording of her conversation with the Defendant.  L.R. was not a suspect of a criminal investigation nor was she the focus of a search and seizure to be conduced by law enforcement. Additionally, L.R. disclosed the alleged sexual abuse to Detective Watson, and also reported that she disclosed the sexual abuse to her mother and her mother did not want to call the police because the Defendant made

12

money for the family. Her school counselor was present before and after the call. Additionally, the Court interviewed L.R. for another pending Motion and finds that interaction adds to the Court's finding that she was able to voluntarily consent to the phone call.

Radcliff has not alleged that L.R. was coerced into participating in the controlled call. Instead, if anything, the record reflects that law enforcement had reason to believe they were protecting L.R. from coercion by her mother when they did not seek her mother's consent for the phone call. The record also shows that the school counselor was present before and after the call, which reduces the opportunity and likelihood for undue influence on the part of law enforcement. Notably, L.R.'s testimony about the phone call contained no hint of coercion or undue influence on the part of the officers. Lastly, Radcliff reduced his own expectation of privacy by openly discussing the abuse with his victim. For him to now negate that by arguing the minor he abused was too young to consent is, as the Commonwealth observes, both disingenuous and distasteful.

Because L.M.'s conversation with Radcliff was lawfully intercepted under the one-party consent exception, Radcliff's suppression motion was properly denied.

### C. *The trial court properly granted the Commonwealth's KRE 412 motion to exclude any mention of a romantic relationship between L.R. and A.B.*

Radcliff next contends that the trial court erred by granting the Commonwealth's KRE 412 motion to exclude any mention of a romantic relationship between L.R. and A.B. This Court reviews a trial court's

13

evidentiary ruling for an abuse of discretion, *Lopez,* 459 S.W.3d at 873, and finds that threshold has not been met here.

During voir dire, while questioning a potential juror at the bench, defense counsel raised the issue of whether it was more likely that teenagers would collude and lie when they were romantically involved, as opposed to being just friends. The potential juror indicated that he thought it would be more likely for teenagers to collude if they were involved romantically. The Commonwealth objected to any mention of L.R.'s and A.B.'s romantic relationship under KRE 412 (known as the "rape shield law") and pointed out that defense counsel had not filed a KRE 412(c) written motion prior to trial. The court indicated it would hear arguments from counsel on KRE 412 following voir dire.

At the hearing, defense counsel argued that the rape shield law did not apply because it had no intention of delving into discussion of a sexual relationship or sexual contact between the victims but thought that evidence of the relationship itself was fair game because it was relevant to whether they had motive to lie. Defense counsel further argued that 12-year-old's being in a romantic relationship did not imply that they were sexually involved. In response, the Commonwealth asserted that references to the victims being romantically involved lent an inference of sexual behavior and the victims' sexual predisposition, which was prohibited under KRE 412.

The trial court ruled that it would address objections to specific statements as they arose during trial but as a general matter, instructed

defense counsel to avoid mentioning a romantic relationship between the victims and to refer to them just as close friends. Radcliff now argues that the court's ruling deprived him of developing his theory of defense that L.R. and A.B.'s relationship influenced a plot to concoct the allegations against him.

KRE 412 concerns the admissibility of the victim's character and behavior in cases involving rape or similar offenses and provides, in relevant part:

> (a) Evidence generally inadmissible. The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
>> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
>> (2) Evidence offered to prove any alleged victim's sexual predisposition.
>
> (b) Exceptions:
>> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
>>> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
>>> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
>>> (C) any other evidence directly pertaining to the offense charged.

KRE 412 "is meant both to shield the victims of sex crimes from painful and embarrassing questions and disclosures about their private sexual activities as well as to preserve the fairness of the proceedings by excluding irrelevant attacks on the victim's character and guarding against distracting the jury with collateral matters." *Montgomery*, 320 S.W.3d at 39. In

15

*Montgomery*, the Court held it was improper under KRE 412 to use evidence of a sexual relationship between the victim and her brother to substantiate the defendant's theory that they had colluded against him since such evidence was "apt to cast [the victim's] character in a bad light." *Id.* at 44. Montgomery was permitted to testify about the close relationship between the victim and her brother – just not a sexual one. *Id.*

Similarly, here, the trial court's restrictions on defense counsel's line of questioning kept it within the boundaries of KRE 412. Radcliff was able to question L.R. about how L.R. resented Radcliff disciplining her because he was not her real father. Radcliff also presented evidence of the close friendship between L.R. and A.B., how they were best friends and how A.B. would frequently sleep over at A.B.'s house and argued his theory that they were colluding against him and were lying.

Regardless of whether defense counsel intended to introduce evidence of sexual contact or a sexual relationship between L.R. and A.B., mention of the victims being romantically involved is prohibited under KRE 412(a)(2) since it goes to their sexual predisposition, even though they were only 12 years old. This is especially so here since, as the Commonwealth points out, the victims' identification as male, though biologically female, could be controversial, if not problematic, for the jury and could invite prejudice. While we acknowledge Radcliff's position that the jury may have been more swayed to believe the victims were fabricating the allegations had it known they were romantically involved, under these facts, introduction of such evidence is barred by KRE

16

412. Thus, we uphold the trial court's ruling on the Commonwealth's KRE 412 motion to exclude.[4]

### D. The trial court's denial of Radcliff's directed verdict motion on the charge of first-degree rape against A.B. was proper.

Radcliff next avers the trial court erred by denying his motion for a directed verdict of acquittal on the charge of first-degree rape against A.B. Specifically, he argues that the Commonwealth failed to meet its burden of showing the rape occurred through forcible compulsion and failed to establish that A.B. was in imminent fear of death or physical injury. We disagree.

To succeed on a motion for directed verdict a defendant must meet a high bar:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Campbell v. Commonwealth*, 671 S.W.3d 153, 163 (Ky. 2023) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).

---

[4] As the Commonwealth notes, the jury nonetheless likely formed the impression anyway that L.R. and A.B. were romantically involved. In one of the letters Radcliff sent to Amanda, which she read at trial, Radcliff writes that he wants L.R. to know he is sorry for "invading her privacy and her boyfriend's privacy." While A.B. was not named as the boyfriend in question, the implication is clear. As a result, any error in the trial court's KRE 412 ruling was rendered harmless by the introduction of this evidence.

17

Upon appellate review, the standard is nearly identical, tasking us with determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Woods*, 657 S.W.3d 902, 906 (Ky. 2022) (quoting *Potts v. Commonwealth*, 172 S.W.3d 345, 349 (Ky. 2005)); *see also Commonwealth v. Jones*, 497 S.W.3d 222, 225 (Ky. 2016) ("Our standard of review for denial of a directed verdict is whether, under the evidence as a whole, it would be clearly unreasonable for the jury to find [the defendant] guilty[]"). The evidence must be of substance and a directed verdict is appropriate where the Commonwealth produces "no more than a mere scintilla" of such evidence. *Beaumont v. Commonwealth*, 295 S.W.3d 60, 68 (Ky. 2009) (quoting *Benham*, 861 S.W.2d at 188).

Radcliff was charged with first-degree rape of A.B. under KRS 510.040(1)(a), which allows conviction for a person who "engages in sexual intercourse with another person by forcible compulsion[.]" "Forcible compulsion" for these purposes is defined as "physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition[.]" KRS 510.010(2).

Caselaw is clear that forcible compulsion may be inferred from the evidence. This Court has held that "[i]n determining whether the victim felt

18

threatened to engage in sex or feared harm from the attacker, a subjective test is applied." *Newcomb v. Commonwealth*, 410 S.W.3d 63, 79 (Ky. 2013). Sufficient evidence of forcible compulsion exists if "[t]aking into consideration all of the circumstances, the jury could believe beyond a reasonable doubt that the [alleged victim] was terror-stricken at the time she submitted to [the defendant]." *Id.* (quoting *Salsman v. Commonwealth*, 565 S.W.2d 638 (Ky. App. 1978)).

Here, taking the evidence in the light most favorable to the Commonwealth, a reasonable juror could have inferred from the evidence that Radcliff used physical force during the rape to place A.B. in fear of physical injury. A.B. testified that she was raped by Radcliff: she was sleeping and was awakened to the bedroom door creaking, and Radcliff walked in; Radcliff put his hand over her mouth, undid her pants and took them off; Radcliff put his penis inside of her vagina; he took both of her hands in one hand and held them above her head. A.B. told the jury "I tried to scream but I couldn't. I couldn't breathe . . . I tried to move my hands but he was stronger than I was." A.B. stated that Radcliff was heavy, was on top of her, and was breathing heavily and grunting, with a scowl on his face. A.B. said when Radcliff was done, he told her not to worry because he was wearing a condom. A.B. cried herself to sleep afterward. The next day, Radcliff drove A.B. home; A.B. testified that she was frightened and uneasy during the car ride.

Certainly, from this evidence a jury could reasonably infer that A.B., 12 years old at the time, was afraid of being hurt during this struggle, especially

19

given the testimony that her physical movement was restricted, and breathing constricted, by an adult male much larger than her. Accordingly, the trial court correctly denied Radcliff's motion for directed verdict on this charge.

### E. *No cumulative error resulted.*

Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Cumulative error exists only "where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* Given that we have found no merit in any of Radcliff's arguments, cumulative error does not exist.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the Boone Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Jared Buck
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General